**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CALEB L. MCGILLVARY,

                Plaintiff,

        v.

RONALD RIEZ, et al.,

                Defendants.

Civil Action No. 22-6430 (MAS) (JBD)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants' motion (ECF No. 28) to dismiss Plaintiff's amended complaint (ECF No. 3) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response to the motion (ECF No. 31), to which Defendants replied. (ECF No. 35). For the following reasons, the motion will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff is a convicted state prisoner confined at New Jersey State prison. (ECF No. 3 at 4.) On June 7, 2019, Plaintiff had a tooth cleaning and was referred for dental care. (*Id.* at 6.) On June 11, 2019, Plaintiff had a dental examination including dental x-rays. (*Id.*) On June 26, 2019, Plaintiff received a tooth cleaning from Defendant Riez. (*Id.* at 7.) Six months later, on January 7, 2020, Defendant Lopez performed dental surgery on Plaintiff's tooth. (*Id.*)

In April 2021, Plaintiff had another tooth cleaning and was referred for a dental exam. (*Id.* at 9.) During the dental exam, a cavity was discovered on tooth fourteen. (*Id.*) Further dental treatment was delayed due to COVID lockdowns, but Plaintiff was eventually seen again on

December 24, 2021, for a filling. (*Id.* at 10.) During the filling, Plaintiff asserts Riez applied the drill on Plaintiff's tooth hard enough to cause pain. (*Id.*)

Following this filling procedure, Plaintiff broke tooth number fourteen on January 11, 2022. (*Id.*) Concerned with potential infection, Plaintiff requested dental treatment. (*Id.* at 11.) Plaintiff was examined on January 14, and was told he would need dental surgery as soon as such procedures resumed following the then ongoing prison lockdown. (*Id.* at 11-12.) Plaintiff received a further examination on February 1, 2022, which included an x-ray. (*Id.* at 12.) Dr. Lopez interpreted the x-ray to indicate that the filling had broken due to tooth decay. (*Id.*) Plaintiff, instead, believes the cusp of his tooth and not his filling had broken. (*Id.*) On March 9, 2022, Plaintiff underwent surgery and had his tooth repaired. (*Id.*) During the procedure, Dr. Bernhard, who performed the surgery, told Plaintiff that his tooth had been undermined from the inside, and that delays due to COVID lockdowns resulted in permanent tooth discoloration. (*Id.* at 12-13.)

On August 22, 2022, Plaintiff reported for another tooth cleaning, but was told by another inmate that Defendant Riez was known for breaking teeth with his dental drill. (*Id.* at 13.) Plaintiff thereafter refused treatment based on this unspecified inmate's advice. (*Id.*) Plaintiff thereafter spoke with other unspecified inmates, who also claimed Riez was known for breaking teeth. (*Id.* at 14.) Plaintiff now believes that his tooth was intentionally broken by Riez during the first filling procedure. (*Id.*)

Moving beyond the dental issue, Plaintiff contends that Defendants conspired to alter or hide his medical records. (*Id.* at 17-18.) Specifically, Plaintiff states that on an unknown date between June 2019 and November 2022, Defendants conspired to alter his health records to cover up their alleged misdeeds. (*Id.*) Plaintiff claims that a number of changes were made to his records at unspecified times by persons unknown. (*Id.* at 18.) Plaintiff does not allege that he ever saw any records that were changed, but bases his assertions on his disagreement with the information

2

contained in his records. (*Id.* at 18-24.) Plaintiff further claims that he filed various grievances regarding the records, but was frustrated by responses with which he did not agree and which he believes amount to obstruction of justice. (*Id.* at 23-24.)

## II.   **LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III.     **DISCUSSION**

In his operative amended complaint,[1] Plaintiff raises the following claims: (1) Defendants violated his Eighth Amendment rights by being deliberately indifferent to his dental needs by breaking his tooth through improper dental care; (2) Defendants engaged in a conspiracy to break his tooth; (3) Defendants either negligently or intentionally inflicted emotional distress upon him by breaking his tooth and allegedly altering his medical records; (4) Defendants intentionally or maliciously harmed him; (5) Defendants caused an offensive physical contact by performing dental work upon him; (6) Defendants engaged in computer tampering and concealed or destroyed evidence; (7) frustrating Plaintiff's grievances amounted to a denial of his right to petition for redress; (8) Plaintiff was denied Due Process when he was deprived of unaltered medical records; (9) Drs. Lopez and Bernhard tortiously failed to aid Plaintiff in his lawsuit; and (10) Defendants engaged in an improper civil RICO conspiracy against him. (ECF No. 3 at 6-36.) Plaintiff also raises a separate claim for punitive damages. (*Id.* at 36.) Defendants now move to dismiss all of Plaintiff's claims.

Turning first to Plaintiff's allegations of a grand conspiracy to alter his medical records, Defendants argue that Plaintiff has failed to plead anything other than a bare allegation of a conspiracy. (ECF No. 28-2 at 7-8.) In order to adequately allege a conspiracy, a plaintiff must plead the elements of a conspiracy – agreement and concerted action. *See Startzell v. City of Philadephia*, 533 F.3d 183, 205 (3d Cir. 2008). The "bare allegation of an agreement is insufficient to sustain a conspiracy claim," *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012), and a

---

[1] In his opposition brief, Plaintiff attempts to sure up his complaint by including additional assertions to support the allegations in his complaint. (*See generally* ECF No. 31.) A party, however, may not amend his pleadings through a brief in opposition to a motion to dismiss. *See, e.g., Federico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007). The additional allegations Plaintiff asserts in his brief are thus not properly before the Court and are irrelevant to the current motion. *Id.*

plaintiff will not demonstrate a conspiracy by merely showing that two parties' actions had the same result or were the result of conscious parallelism without evidence supporting agreement and concerted action. *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015).

In his amended complaint, Plaintiff provides bare allegations that Defendants agreed at a time unknown to alter his medical records. Plaintiff, however, does not plead any facts to actually support his conclusory statement that a conspiracy existed. (ECF No. 3 at 19.) As to agreement, Plaintiff raises only a conclusory allegation that there was a meeting of the minds. (*Id.* at 17.) Plaintiff does not plead what agreement was reached, when each or any Defendant agreed to enter into the agreement to alter or hide records, or the like. Likewise, as to concerted action, Plaintiff essentially just pleads that his records do not say what he believes they should, which Plaintiff concludes must have been the result of a cover up. (*Id.* at 18-22.) Plaintiff does not detail what actions each Defendant specifically took in furtherance of the conspiracy. Plaintiff has thus provided only a conclusory allegation of conspiracy, and has not pled facts sufficient to support such a claim. Plaintiff's conspiracy claims must therefore be dismissed without prejudice at this time.

Plaintiff's civil RICO claims are similarly deficient. As one court in this District has explained,

> 18 U.S.C. § 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]". 18 U.S.C. § 1962(d). "The RICO statute provides for civil damages for any person injured in his business or property by reason of a violation of [§ 1962]." *Amos v.*

*Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 167 (2013) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995)).

> A violation of the statute[:]
>
> requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is the mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.
>
> *Id.* The injury to business or property element requires "proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). A complaint therefore must contain allegations "of actual monetary loss, i.e., an out-of-pocket loss" to adequately plead the injury element. *Id.* Physical or emotional harm to a person is insufficient to show that a person was injured in his business or property under the act. *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007). "Similarly, losses which flow from personal injuries are not [damage to] property under RICO." *Id.* (internal quotations omitted). Losses derived from a Plaintiff's false imprisonment are derivative of a personal injury, and therefore cannot constitute a RICO injury. *See Magnum v. Archdiocese of Philadelphia*, No. 06-2589, 2006 WL 3359642, at *4 (E.D. Pa. Nov. 17, 2006), *aff'd*, 236 F. App'x 224 (2007); *see also Evans v. City of Chicago*, 434 F.3d 916, 926-27 (7th Cir. 2006), *overruled in part on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

*Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *6-8 (D.N.J. Aug. 19, 2015).

Even putting aside the fact that Plaintiff fails to adequately plead a conspiracy, and the unclear allegations of underlying acts in furtherance of racketeering activity,[2] Plaintiff's civil

---

[2] Plaintiff fails to plead alleged acts in furtherance of wire fraud or obstruction of justice with particularity, which requires more than mere allegations of altered medical records. *See* Fed. R. Civ. P. 9; 18 U.S.C. § 1503.

6

RICO claims must fail because all of his damages flow from personal injury—the damage to his teeth. Such injuries are not injuries to a property or business interest, and are patently insufficient to support a civil RICO claim. *Id.* Plaintiff thus fails to state a claim for relief under RICO, and his civil RICO claims are dismissed without prejudice.

Defendants also move to dismiss Plaintiff's deliberate indifference to dental needs claim. (ECF No. 28-2 at 6-7.) To make out a claim for deliberate indifference to medical needs, including dental needs, a plaintiff must plead facts indicating that the defendants knew of a prisoner's serious medical needs and were deliberately indifferent to those needs, *i.e.*, that the defendants recklessly disregarded a serious risk of harm posed by those needs. *See Afdahl v. Cancellieri*, 463 F. App'x 104, 107 (3d Cir. 2012). Here, Plaintiff seeks to plead two separate claims: (1) that his tooth was intentionally damaged by Defendant Riez during a tooth repair with a dental drill; and (2) that a further tooth repair was delayed for two months. (ECF No. 3 at 9-11.) Turning first to the delay issue, Plaintiff pleads that he broke his tooth in January 2022, and it was not repaired until two months later. (*Id.* at 11.) Plaintiff further pleads, however, that he was seen in January 2022, was told he would need the tooth repaired as soon as dental procedures were permitted by the prison after the COVID lockdown then in place ended, Defendants continued to monitor Plaintiff's tooth in February 2022, and fixed it in early March. (*Id.* at 10-12, ECF No. 28-2 at 6-7.) These facts are not indicative of deliberate indifference. Defendants monitored the issue and repaired it once external circumstances—the COVID lockdowns—permitted them to do so. Plaintiff's claim based on delay must therefore be dismissed without prejudice.

In his remaining claim, Plaintiff alleges that Defendant Riez purposefully damaged his tooth with a dental drill in the hopes of making more money through further dental procedures. Giving Plaintiff the benefit of all due inferences, he has pled enough facts to support his claim against Riez only. Here, Plaintiff has pled that he had a damaged tooth, Riez used that opportunity

to purposefully cause further damage, and that he suffered further as a result.  Such allegations are sufficient to support his claim against Riez, and Defendants' motion is denied as to that claim.

Defendants next argue that Plaintiff has failed to plead a cognizable claim for intentional infliction of emotional distress.  (ECF No. 28-2 at 10.)  To support such a claim, a plaintiff must plead that the defendant intended to cause emotional harm, engaged in extreme and outrageous conduct, that this conduct proximately caused distress, and that this emotional distress was extreme.  *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001); *see also Smart v. Santiago*, No. 15-1065, 2015 WL 2226207, at *6 (D.N.J. May 12, 2015); *Taylor v. Metzger*, 706 A.2d 685, 694-97 (N.J. 1998).  As to the intent element, a defendant must both intend to perform the act and intend to cause emotional harm.  *Taylor*, 706 A.2d at 694 (internal quotations omitted).  Here, Plaintiff has failed to plead facts indicating that Defendants intended to cause him emotional harm, or that his emotional distress was sufficiently extreme to support his claim.  Plaintiff's intentional infliction of emotional distress claim must therefore be dismissed without prejudice.

Plaintiff's negligent infliction of emotional distress claim fares no better.  Under New Jersey law, such a claim requires that a plaintiff plead facts showing that the defendant owed a duty of care toward the plaintiff, the defendant breached that duty, and that this breach proximately caused genuine and substantial emotional distress.  *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002).  Whether a duty exists largely rests on whether severe mental distress was directly foreseeable from the actions in question.  *Id.*  Loss of sleep, aggravation, headaches, nausea, and the like are insufficiently severe to support a claim for relief.  *Id.* at 280.  Here, even assuming a duty was owed and breached, Plaintiff has failed to plead sufficiently severe emotional distress as a result of Defendants' alleged actions. He has not identified what distress he clearly suffered other than discomfort and frustration, and thus fails to set forth a valid claim for negligent

infliction of emotional distress.  Plaintiff's negligent infliction claim is therefore dismissed without prejudice.

Defendants next argue that Plaintiff's malicious harm claim should be dismissed as it represents a form of prima facie tort claim that is inapplicable in a situation where a more specific type of tort claim is available.  (ECF No. 28-2 at 11.)  A malicious harm to another under New Jersey is a species of prima facie tort that may only be used to cover claims which "fall within the gaps of the law." *Taylor v. Metzger*, 152 N.J. 490, 522-23 (N.J. 1998).  It is a "tort of last resort" that does not apply in cases where state law makes available a more specific cause of action.  *Id.* Here, Plaintiff's claim arises out of alleged dental mistreatment, an action covered by several more specific torts including dental malpractice.  Plaintiff, consequently, may not resort to the generic tort of malicious harm, and this claim must be dismissed without prejudice.

Defendants also move to dismiss Plaintiff's offensive physical contact claim.  (ECF No. 28-2 at 12.)  Plaintiff frames this claim as Riez damaging his tooth "without consent or with consent obtained by . . . fraud." (ECF No. 3 at 30.)  That places his claim within the ambit of the state law tort of battery, which occurs when a medical procedure is performed upon a patient without proper consent.  *See, e.g., Murphy v. Implicito*, 392 N.J. Super. 245, 259-60 (App. Div. 2007).  Such a claim, however, is inapplicable where the patient consented to the procedure in question.  *Id.* at 260.  Here, although Plaintiff provides an insufficient conclusory allegation of fraud, his own amended complaint shows that he consented to the medical procedure in question— the filling of his tooth—and only took issue with it when his tooth was later reinjured and after he heard from others that the professional in question allegedly had a reputation for damaging teeth. (ECF No. 3 at 12.)  Because Plaintiff clearly alleges that he consented to undergo the procedure, and fails to adequately plead that fraud or misrepresentation resulted in faulty consent, his claim cannot proceed as a battery claim.  Instead, the claim is viable only as either a malpractice or

similar claim, such as a deliberate indifference claim. *Murphy*, 392 N.J. Super. at 259. Plaintiff's

offensive physical contact claim is therefore dismissed without prejudice.

Defendants next contend that Plaintiff's computer tampering and concealment or

destruction of evidence claims must be dismissed for failure to state a claim. (ECF No. 28-2 at

13.) Under the relevant state statute, "[a] person or enterprise damaged in business or property"

may sue for compensatory damages for the purposeful, knowing, and unauthorized alteration,

destruction, or damaging of data, computers, computer systems, or financial instruments of

another. *See* N.J. Stat. Ann. § 2A:38A-3; *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d

262, 277 (3d Cir. 2016). By its very nature, such a claim requires damage to business or property.

Plaintiff clearly has no business interest at stake here, and the only "property" interest he claims is

his interest in possession of his medical records which he speculates have been altered. Such an

interest is generally not the sort of interest that is properly classified as a "property" interest in the

relevant sense. *See, e.g., Vavro v. Albers*, No. 05-321, 2006 WL 2547350, at *14 (W.D. Pa. Aug.

31, 2006). Plaintiff also fails to plead facts clearly showing Defendants were not authorized to

access the medical records system they allegedly altered. (ECF No. 3 at 17-24.) Indeed, as the

authors of the records in question, it certainly appears they did have authorization, which in itself

would be fatal to Plaintiff's claims. *See, e.g., Marcus v. Rogers*, 2012 WL 2428046, at *5 (N.J.

App. Div. June 28, 2012). Plaintiff's computer tampering claims must therefore be dismissed

without prejudice.

Plaintiff's destruction of evidence claim fares no better. Under state law, a remedy is

available for the fraudulent concealment or destruction of evidence only where such a claim is

raised in relation to ongoing or pending litigation where a legal discovery obligation of disclosure

has attached. *See, e.g., Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 118-20 (2008). In his

amended complaint, Plaintiff alleges that his records were altered or changed at some unknown

10

point between 2019 and 2022. (ECF No. 3 at 18.)  This was before Plaintiff filed his complaint in

this matter and, thus, before any legal obligation of discovery could be said to have arisen.  Absent

such an obligation, Plaintiff's state law spoliation-related claim fails to state a claim for relief.

Plaintiff's destruction of evidence claim is therefore dismissed without prejudice.

In a related claim, Plaintiff asserts that the doctor Defendants failed to aid him in pressing

his current litigation. (*Id.* at 34.)  Under New Jersey law, a treating physician has a duty to "render

reasonably required litigation assistance to his patient." *Spaulding v. Hussain*, 229 N.J. Super.

430, 438-41 (App. Div. 1988).  That duty, however, is not absolute.  *Spaulding* dealt expressly

with a case in which a treating physician promised to testify in a personal injury action but failed

to do so.  The physician defendant in *Spaulding* was held liable for forcing the plaintiff into an

insufficient settlement for his injuries insomuch as he failed to live up to his promise to appear and

testify.  *Id.*  *Spaulding* did not involve a case where the physician was a *defendant* in the very

action in which he was alleged not to have aided.  Fundamental fairness and the basic principles

of the adversarial judicial system require that a named defendant cannot be forced to aid his

adversary beyond the bounds of what is required by discovery obligations up to and including

future depositions, aid which Defendants have not, at this early stage, refused.  Indeed, *Spaulding*

noted that willingness to be deposed itself was likely sufficient to live up to a treating physician's

obligations.  *Id.* at 436.  In any event, a claim under *Spaulding* would require a plaintiff to plead

that his litigation interests were actively injured in the form of a lost or reduced meritorious

damages claim.  *Id.* at 444-45.  At this stage of the litigation, before Plaintiff has even proceeded

to seek what information he desires from Defendants in discovery, he cannot possibly plead such

an outcome.  Plaintiff's claim is at best premature, and he has failed to plead facts permitting an

inference of the appropriate source of damages.  Thus, even if the *Spaulding* duty could be applied

to one's adversaries, Plaintiff fails to plead a cognizable claim for relief and Plaintiff's failure to aid claim must be dismissed without prejudice at this time.

Defendants next argue that Plaintiff's First Amendment claim regarding his right to petition the Government should be dismissed as Plaintiff has not adequately pled a violation of his rights. (ECF No. 28-2 at 16-17.) Plaintiff's claim largely centers around Defendants' alleged interference with his ability to file prison grievances and to file notices of tort claims. Prisoners, however, have no right to a prison grievance system, nor do they possess a constitutional right to a response if the state creates a prison grievance system. *See, e.g., Roberts v. Aviles*, No. 10-5916, 2012 WL 603790, at *1 n.4 (D.N.J. Feb. 16, 2012); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"). That Plaintiff believes his grievances were impacted thus provides no basis for a claim for relief.[3]

Turning to Plaintiff's ability to file notices of claim and to file suit, the operative constitutional claim would be one for denial of access to the courts. To plead such a claim, however, Plaintiff would have to plead facts indicating that Defendants had taken actions which prevented him from pursuing his claims in court which in turn caused him to lose a viable claim for relief. *See Lewis v. Casey*, 518 U.S. 343, 346-51 (1996); *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997); *see also Bragg v. Ann Klein Forensic Ctr.*, No. 09-3743, 2010 WL 4366255, at *4 (D.N.J. Oct. 28, 2010). Plaintiff has pled no such facts, and the facts he does plead suggest the opposite. Plaintiff alleges he was able to file notices of tort claims, and Plaintiff clearly was able to file suit in this Court notwithstanding his difficulties with prison administration. (*See*

---

[3] It is possible that muddling with his grievances may be relevant to the extent exhaustion is ever raised as a defense in this matter at summary judgment, but it is not a separate basis for a claim.

*generally* ECF No. 3.)  As Plaintiff has not clearly pled that he lost a viable claim for relief as a result of those difficulties, he has failed to plead a plausible claim for a violation of his First Amendment rights, and his redress claims must therefore be dismissed without prejudice.

Defendants next move to dismiss Plaintiff's Due Process[4] claims regarding his alleged inability to recover unaltered medical records.  (ECF No. 28 at 17.)  Neither the New Jersey or Federal Courts have recognized a cognizable liberty or property interest in one's medical records sufficient to support a constitutional claim for relief. *See Wade v. Mills*, No. 19-21501, 2021 WL 689106, at *3 (D.N.J. Feb. 23, 2021).  As Plaintiff has no clear liberty or property interest in his medical file sufficient to support a Due Process claim, he fails to state a cognizable claim for relief based on alleged tampering with his medical file, and his Due Process claims are therefore dismissed without prejudice.[5]

Finally, Defendants move to dismiss Plaintiff's separate claim for punitive damages.  (ECF No. 28-2 at 25.)  Although Plaintiff, if he succeeds in proving his claims, may be able to seek punitive damages, they are not a separate and independent claim for relief. *See Martinez v. Safariland, LLC*, No. 21-12028, 2022 WL 621012, at *4 (D.N.J. Mar. 3, 2022); *see also Cagno v. Ivery*, No. 19-20384, 2022 WL 17887231, at *10 (D.N.J. Dec. 22, 2022).  Thus, to the extent

---

[4] Plaintiff sought to raise his claim under both the Fifth and Fourteenth Amendments.  The Fourteenth Amendment applies to the actions of state actors only and the Fifth Amendment applies to the Federal Government only.  Here, Plaintiff's claim arises under the Fourteenth Amendment's Due Process Clause. *See, e.g.. Timm v. New Jersey*, No. 18-9769, 2019 WL 6699450, at *2 (D.N.J. Dec. 9, 2019).

[5] Plaintiff references several state statutes and HIPAA as supporting his alleged interest in his files. The State of New Jersey has thus far refrained from recognizing a private cause of action under the relevant state statutes, *see Wade*, 2021 WL 689106, at *2-3, and HIPAA vests enforcement solely in the hands of the Federal Government and does not provide a private cause of action. *See, e.g., Welch v. Cape May Cnty. Corr. Ctr.*, No. 15-8745, 2016 WL 686255, at *2 (D.N.J. Feb. 19, 2016).  Thus, to the extent Plaintiff may have intended to rely on these statutes for his claim, his claim would still fail to state a cognizable claim for relief as a private right of action.

Plaintiff's intent was to raise a separate punitive damages claim, that claim is dismissed without prejudice.

## IV.     CONCLUSION

For the reasons expressed above, Defendants' motion is granted in part and denied in part. Plaintiff's deliberate indifference claim shall proceed against Defendant Riez only at this time and Plaintiff's remaining claims are all **DISMISSED WITHOUT PREJUDICE.**  An order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

14