UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CALEB L. MCGILLVARY,

Plaintiff,

v.

RONALD RIEZ, *et al.*,

Defendants.

Civ. No. 22-6430 (MAS)(JBD)

**MEMORANDUM ORDER**

Before the Court are several motions filed by *pro se* plaintiff Caleb L. McGillvary:

- A motion to enforce a subpoena directed to non-party Rutgers, The State University of New Jersey ("Rutgers"), or in the alternative, for designated facts to be taken as established as a discovery sanction for Rutgers's alleged spoliation of evidence. [Dkt. 93.]
- A motion to suppress the transcript of McGillvary's deposition and to compel the production of the audio recording of the deposition. [Dkt. 97.]
- A motion for leave to file a second amended complaint, or alternatively, to file a supplemental complaint. [Dkt. 101.]
- A motion for an order holding non-party New Jersey Department of Corrections ("NJDOC") in contempt and compelling NJDOC to produce documents requested in a subpoena directed to it. [Dkt. 115.]

Each motion is opposed. The Court has carefully considered the parties' motion papers and resolves some of the motions without oral argument. For the reasons set forth below, McGillvary's motion to enforce the subpoena directed to Rutgers is GRANTED in part and DENIED in part; McGillvary's motion to suppress the deposition transcript is DENIED; McGillvary's request to compel production of the

audio recording of the deposition is held in abeyance pending further discussion with the parties; McGillvary's motion to compel NJDOC's compliance with the subpoena directed to it is GRANTED in part and DENIED in part; and McGillvary's motion to hold NJDOC in contempt is DENIED.

In light of the Court's resolution of these motions, the Court will administratively terminate, without prejudice, McGillvary's motion for leave to file a second amended complaint, or alternatively, to file a supplemental complaint. Many of McGillvary's proposed amendments are intertwined with the issues raised in the motions that the Court addresses today. Because some of those issues must be more fully fleshed out, the Court defers ruling at this time on the motion to amend or supplement. Accordingly, the Court will administratively terminate that motion, without prejudice, pending further proceedings.

The Court will hold a telephone conference on **November 20, 2025** at **2:00 p.m.** to discuss McGillivary's motion for leave to file an amended or supplemental complaint, and to discuss other items as detailed below.

## I.    BACKGROUND

McGillvary brought this action on November 2, 2022 against defendant Ronald Riez, a Rutgers dental hygienist, alleging that Riez deliberately injured his tooth and then failed adequately to treat the injury for several months. [Dkt. 1.] On December 2, 2022, McGillvary filed an amended complaint alleging several additional claims and adding as defendants Samual Lopez, Joel Berhard, X Zhou, K Mosely-Massenat, University of Medicine & Dentistry of New Jersey, University

Correctional Healthcare, and several John Does and an ABC entity. [Dkt. 3.] Specifically, McGillvary alleged that: (1) defendants violated his Eighth Amendment rights through their deliberate indifference to his dental needs by breaking his tooth through improper dental care; (2) defendants engaged in a conspiracy to break his tooth; (3) defendants negligently or intentionally inflicted emotional distress upon him by breaking his tooth and altering his medical records; (4) defendants intentionally or maliciously caused him harm; (5) defendants caused an offensive physical contact by performing dental work upon him; (6) defendants engaged in computer tampering and concealed or destroyed evidence; (7) defendants caused a denial of McGillvary's right to petition for redress by frustrating his grievances; (8) defendants denied McGillvary due process by depriving him of his unaltered medical records; (9) defendants Lopez and Bernhard tortiously failed to aid in his lawsuit; and (10) defendants engaged in a civil RICO conspiracy against him. *Id.* at 6-36.

Defendants moved to dismiss the amended complaint. [Dkt. 28.] On November 20, 2023, the Court dismissed all of McGillvary's claims without prejudice, except for his Eighth Amendment claim against Riez for deliberate indifference to medical/dental needs, which the Court sustained. [Dkt. 36] at 4-14; [Dkt. 37]. McGillvary did not seek leave to file an amended complaint, and the parties proceeded to discovery on his one remaining claim against Riez. *See, e.g.,* [Dkt. 60].

### A. History of Discovery Disputes

Discovery in this case has been beset by motion practice and disputes. Most relevant for present purposes, McGillvary previously filed a motion to enforce a subpoena directed to Rutgers [Dkt. 66], and a motion to enforce a subpoena directed to NJDOC [Dkt. 73]. More recently, he filed a request for an order directing NJDOC to show cause why it should not be held in contempt for its alleged noncompliance with the Court's February 6, 2025 Order (the "February 6 Order") regarding his motion to enforce the subpoena directed to it. [Dkt. 94.] McGillvary also has filed several requests for the production of the audio recording of his deposition. *See* [Dkts. 96, 102]. Because they help frame the analysis on the present motions, the Court first summarizes those earlier discovery disputes.

#### 1. Prior Motions to Enforce Subpoenas and Resulting Requests

During discovery, McGillvary directed document subpoenas to non-parties Rutgers and NJDOC. [Dkts. 93-6] at Ex. A; [Dkt. 115] at Ex. A. From Rutgers, McGillvary sought, as relevant here, "all the original, unaltered Dental Charts . . . [and] [x]rays created of [his]'s mouth from June 1, 2019 onwards." [Dkt. 93-6] at Ex. A. From NJDOC, McGillvary sought, among other things, "Officers log books," "Inmate Travel Logs," "Inmate Travel Pass Logs," and "Visitor or Employee access logs" for various locations on the dates and times that Riez worked, and on which McGillvary received dental treatment, during an 11-month period from April 2021 through March 2022. [Dkt. 115] at Ex. A. When he did not receive all of the

documents that he requested, McGillvary filed motions to enforce the subpoenas. [Dkts. 66, 73].

In his motion to enforce the Rutgers subpoena, McGillvary primarily sought his dental charts and x-rays, and argued that Rutgers had improperly objected to his requests for those documents. [Dkt. 66-1] at 4-12. Rutgers responded that it adequately responded to McGillvary's subpoena, and asserted that dental charts and x-rays, "beyond what may be included in [McGillvary]'s complete medical records, which were already produced," did "not exist" and therefore could not be produced. [Dkt. 72] at 3-4. In his motion to enforce the NJDOC subpoena, McGillvary sought, among other things, the travel records and logs described above. [Dkt. 73] at 5-11.

The Court heard oral argument on both motions to enforce during a telephone status conference on January 30, 2025. [Dkts. 86, 100.] During the conference, McGillvary explained that he needed the x-rays and dental charts to show the damage he had sustained to his tooth and the lack of treatment over time, and the parties involved. [Dkt. 100] at 13:3-14:3. Rutgers reiterated that there were no x-rays to produce, suggesting that x-rays were "not kept in [the] normal course," because the dentist looked at any x-rays taken on an electronic screen and made notes in the patient's electronic medical file, but did not maintain any electronic or hard copies of the x-rays. *Id.* at 21:15-26:7. Regarding the motion to enforce the NJDOC subpoena, McGillvary asserted that he needed the relevant records and logbook entries to demonstrate that he was present in the prison's

dentist facility at the same that Riez had been there. *Id.* at 36:10-12. NJDOC argued that producing such records created a security concern and would be unduly burdensome but conceded that it had not yet undertaken a review of any potentially relevant documents. *Id.* at 34:22-35:18, 36:13-17.

During the conference and in a resulting Order, the Court directed Rutgers to submit a "sworn declaration from an official with knowledge explaining Rutgers's policies and procedures regarding the generation and retention of dental x-rays taken of inmates incarcerated at New Jersey State Prison" ("NJSP") but otherwise denied the motion to enforce the Rutgers subpoena. [Dkt. 87] at 1; *see also* [Dkt. 100] at 23:7-11, 30:10-31:23. The Court also largely denied McGillvary's motion to enforce the NJDOC subpoena, but directed NJDOC to "review relevant records and logbook entries for dates that [McGillvary] shall provide" and to file a status letter regarding the review. [Dkt. 87] at 1-2; *see also* [Dkt. 100] at 37:15-39:19, 43:18-44:9.

On February 19, 2025, in compliance with the February 6 Order, Rutgers submitted the sworn declaration of its Director of Dentistry, Dr. Andrew Youngblood, D.M.D. (the "Youngblood Declaration"). [Dkt. 88.] In short, the Youngblood Declaration explained that hard copies of inmates' dental x-rays typically are maintained in the ordinary course at NJSP in each inmate's "medical reference file," and that contemporaneous "notes based on [the dentist's] examination of the x-ray" are entered "in the patient's electronic medical record." [Dkt. 88-1] ¶¶ 4-6. The Youngblood Declaration also stated, however, that for

reasons unknown, "there are no x-rays in [McGillvary]'s paper medical chart," even though his electronic medical records contain "notes relating to results of [ ] x-rays [having been] taken." *Id.* ¶¶ 7-9. In response to this revelation, McGillvary filed a written objection to the February 6 Order requesting that it be modified or reconsidered to allow him to seek further relief on the x-ray issue. [Dkt. 89.] But because the February 6 Order did not "preclude [McGillvary] from seeking further relief in respect of the x-rays once Rutgers filed the declaration," the Court declined to modify or reconsider the Order and noted that McGillvary could "seek any relief that he believes is warranted in light of the information set forth in the declaration." [Dkt. 91] at 2. The present motion to enforce the Rutgers subpoena followed. [Dkt. 93.]

On March 20, 2025, NJDOC separately filed a letter representing that, consistent with the February 6 Order, it had reviewed the relevant logbook entries and planned to make a production of relevant documents. [Dkt. 92.] Notwithstanding this representation, McGillvary filed a request for an order directing NJDOC to show cause why it should not be held in contempt for its alleged noncompliance with the February 6 Order. [Dkt. 94.] McGillvary argued that NJDOC violated the February 6 Order by failing to provide him with relevant records and logbook entries within 21 days of January 31, 2025, when he supplied the requisite list of dates to NJDOC. [Dkt. 94-2] ¶¶ 2-3. On April 29, 2025, NJDOC provided responses and objections to McGillvary's requests and ultimately produced a small number of heavily redacted documents related to Riez. [Dkt. 129-2] at

Ex. B. Because NJDOC had filed a status letter regarding its review and production within 21 days of receiving the list of dates from McGillvary and thereafter made a production of documents to him, the Court determined that NJDOC had complied with the February 6 Order and denied McGillvary's request for an order to show cause. [Dkt. 113] at 1-2. McGillvary subsequently filed the present motion for an order holding NJDOC in contempt and compelling NJDOC to produce the requested documents after identifying purported deficiencies in NJDOC's April 29 production. [Dkts. 115; 129.]

**2. Requests for the Audio Recording of McGillvary's Deposition**

In the midst of these disputes, Riez sought leave to take McGillvary's deposition. [Dkt. 80.] The Court granted the request in an Order entered on January 8, 2025, which, among other things, set a date and time for the deposition and provided that "[a] Court Reporter with Veritext Legal Solutions [wa]s permitted to attend [McGillvary's] deposition and bring a steno machine, a laptop computer, tape recorder, and/or microphone (and the various cords and plugs for such equipment) into [NJSP] for the purpose of recording said deposition." [Dkt. 83.] McGillvary's deposition went forward on January 22, 2025. *See* [Dkt. 97-5] at 2. On March 18, 2025, McGillvary submitted a request for the audio recording of his deposition to the Court,[1] and on March 28, 2025, the Court received the present

---

[1] McGillvary filed a renewed request for a copy of the audio recording of his deposition with a payment of $34.00 for the reproduction of the recording on April 15, 2025. [Dkt. 102.] Because "the Court does not possess any audio

motion to suppress the transcript of his deposition and to compel the production of the audio recording of the deposition.  [Dkts. 96, 97.]

## II.    DISCUSSION

The Court here addresses three of McGillvary's pending motions: (1) the motion to enforce the subpoena directed to Rutgers, or in the alternative, for designated facts to be taken as established as a discovery sanction for Rutgers's alleged spoliation, [Dkt. 93]; (2) the motion to suppress the transcript of his deposition and to compel the production of the audio recording of the deposition, [Dkt. 97]; and (3) the motion for an order holding NJDOC in contempt and compelling NJDOC to produce the documents requested in the subpoena directed to it, [Dkt. 115].  Each of these motions is opposed.

With the above backdrop in place, the Court summarizes and then resolves each of the three motions.

### A.    Motion to Enforce the Subpoena Directed to Rutgers

#### 1.    Summary

In his motion to enforce the Rutgers subpoena, McGillvary argues that Rutgers's objections to his requests for dental charts and x-rays requested are inadequate, baseless, and untimely, and that "[a]ny and all potential objections to the production and use" of such documents should therefore be deemed "[w]aived

---

recording of McGillvary's deposition, to the extent one exists," the Court directed the Clerk "to refund the sum of $34.00 to [McGillvary] via mail."  [Dkt. 110.]

and [o]verruled."[2] [Dkt. 93-4] at 3, 5-8. Additionally, McGillvary contends that Rutgers's own documents and statements demonstrate that the files he seeks through his subpoena do exist and should be in Rutgers's possession. *Id.* at 8-9. He therefore asks the Court to compel Rutgers to produce the requested dental charts and x-rays. *Id.* at 2-3, 8-9; [Dkt. 117] at 2-8. If Rutgers does not or cannot produce such documents, McGillvary alternatively asks the Court to take certain facts as established as a sanction for apparent spoliation pursuant to Federal Rule of Civil Procedure 37(b)(2). [Dkt. 93-4] at 3-4, 8-9; [Dkt. 117] at 8-9. Specifically, McGillvary asks the Court to deem as established the following facts: that his dental charts and x-rays from June 11, 2019 and January 7, 2020, which predate the dental procedure at issue in this case, show that he did not have fillings or any prior dental surgery; and that the dental charts and x-ray from February 1, 2022, which postdates the dental procedure, show a filling and fractured tooth resulting from excessive force applied by a dental drill that was not repaired until March 2022. [Dkt. 93-4] at 3-4, 9-10. Finally, McGillvary requests that any resulting order on this issue "[e]stablish[] contempt sanctions in the event that [Rutgers] fails to comply." *Id.* at 3.

---

2 The Court denies McGillvary's motion in this respect. As noted on the record during the telephone status conference on January 30, 2025, the Court "do[es] not consider the discovery disputes . . . as anything other than good faith advocacy by both sides, including the defendants' attorneys," who "asserted objections [to McGillvary's requests] . . . [and] arguments in response to [McGillvary's] motions." [Dkt. 100] at Tr. 11:23-12:8.

In response, Riez and Rutgers argue that McGillvary's motion to enforce should be denied in its entirety. [Dkt. 105] at 1. Regarding his request to compel the production of his dental records, Riez and Rutgers argue that "Rutgers does not maintain 'dental charts' separate and distinct from the electronic medical record," which McGillvary already has, so there is nothing for the Court to compel. *Id.* at 1-2. Regarding the x-rays, Riez and Rutgers challenge McGillvary's assertion that x-rays were taken on any dates other than February 1, 2022, because "[McGillvary]'s medical records are devoid of any reference that an x-ray was taken during th[e] [other] dates" in question; and represent that "despite a diligent search by multiple individuals, to the extent any x-ray was taken in February 2022, which was referenced in the medical records, Rutgers cannot locate that x-ray." *Id.* at 2. Because the x-ray cannot be found, Rutgers and Riez argue, Rutgers "cannot be compelled to produce it." *Id.* at 2. Finally, with respect to McGillvary's request for certain facts to be taken as established, Riez and Rutgers argue that "[McGillvary]'s reliance on Fed. R. Civ. P. 37(b)(2)(A)(i) is misplaced," because Rutgers is not a party to this case, and regardless, the Rule only permits "sanctions for a party's failure to comply with a Court Order" and "neither Rutgers nor [d]efendant Reiz [sic] has failed to comply with any Order issued by this Court subjecting them to sanctions under Rule 37." *Id.* at 2-3.

**2. Decision**

For the reasons set forth below, the Court grants McGillvary's motion to enforce in part and denies it in part.

### a. McGillvary's Request for Facts to be Taken as Established

The Court first addresses McGillvary's request for certain facts to be taken as established pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i). As an initial matter, the Court notes that "[o]n its face . . . Rule 37(b)(2) applies only to parties." *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 220 (3d Cir. 1997). Indeed, "Rule 45 is the exclusive authority in the Federal Rules of Civil Procedure for imposing sanctions against a nonparty for failure to comply with a subpoena *duces tecum*," including sanctions "for defying a subpoena by improperly destroying and/or spoliating evidence." *Housemaster SPV LLC v. Burke*, Civ. No. 21-13411 (MAS), 2022 WL 17904254, at *9 (D.N.J. Dec. 23, 2022). Regardless whether Rule 37 or Rule 45 is applicable, however, the imposition of sanctions is not warranted at this time, and McGillvary's request is therefore denied without prejudice.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (citations omitted). McGillvary bears the burden of proof as the party seeking the spoliation sanction. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 77 (3d Cir. 2012). While McGillvary raises legitimate concerns that Rutgers may have failed to preserve his x-rays and/or paper medical chart, based on the current record, he "has not satisfied [his] burden in showing that [Rutgers] committed an affirmative act of spoliation or that [it] destroyed relevant evidence

after being served with the [s]ubpoena." *Housemaster SPV*, 2022 WL 17904254, at *10. Accordingly, to the extent that he seeks sanctions for alleged spoliation, McGillvary's motion is denied as premature.

**b. McGillvary's Request for Dental Charts and X-Rays**

Nevertheless, the Court's review of the Youngblood Declaration and the parties' motion papers raises some questions and leaves others unanswered. Although Riez and Rutgers assert that Rutgers does not maintain dental charts apart from the electronic medical record already produced, [Dkt. 105] at 1, and despite the Court's previous comment that it was "satisfied that there [we]re no separate dental charts that would not otherwise be reflected in [McGillvary]'s medical records themselves," [Dkt. 100] at 30:15-19, the Youngblood Declaration now raises questions about the possible existence of additional medical records in Rutgers' possession that may not have been produced. Most notably, Dr. Youngblood references a "[p]atient[] medical reference file" where hard-copy x-rays are typically maintained, as well as a "paper medical chart." [Dkt. 88-1] ¶¶ 5, 9. The Youngblood Declaration does not further elaborate on what these records are, so it is unclear whether McGillvary's "medical reference file" or his "paper medical chart" contain documents separate and apart from the electronic medical record that Rutgers has already produced.

Accordingly, the Court will direct Rutgers to file via CM/ECF another sworn declaration, from an appropriate official with knowledge, explaining Rutgers's policies and procedures regarding the creation and retention of dental records taken

of NJSP inmates and certifying that all relevant and available dental records—whether maintained electronically or in hard copy—have been produced to McGillvary. The declaration shall include an explanation of what the "medical reference file" and the "paper medical chart" are and how they relate to inmates' electronic medical record. To the extent there are any relevant dental records in McGillvary's "medical reference file" or "paper medical chart" that have not been produced to McGillvary through the electronic medical record, Rutgers shall produce them.

Regarding McGillvary's x-rays, the Court is now satisfied, based on the Youngblood Declaration, that "there are no x-rays in [McGillvary]'s paper medical chart." *Id.* ¶ 9. McGillvary's motion is therefore denied insofar as it seeks to compel the production of the x-rays themselves. *Sherrill v. City of Hoboken*, Civ. No. 16-3092 (ES), 2018 WL 5630028, at *3 (D.N.J. Oct. 31, 2018) (a party cannot be compelled to produce documents that it does not possess or cannot obtain). However, although the Court declines at this time to make any ruling regarding spoliation, the Court remains uncertain about when (and how many) x-rays were taken of McGillvary's mouth during the relevant time period[3]; why the resulting

[3] As noted above, Riez and Rutgers seem to contend that x-rays were only taken of McGillvary's mouth in February 2022. *See* [Dkt. 105] at 2 (stating "there is no evidence in the record that the June 11, 2019, January 2, 2020, and 'late 2021' x-rays even exist" as "[McGillvary]'s medical records are devoid of any reference that an x-ray was taken during those dates."). But McGillvary's electronic medical record, on the Court's review of it, seems to reflect inconsistencies that indicate otherwise. The record documenting McGillvary's June 11, 2019 dental appointment states, "panorex done: yes" and "panorex: yes" under radiographs, but also says

x-ray(s) are no longer in his file; and what efforts were undertaken to search for the x-rays. Although Rutgers asserts in its opposition brief that it undertook a "diligent search by multiple individuals," [Dkt. 105] at 2, under the circumstances, this bare representation is not sufficient. The Court thus directs Rutgers to include in the supplemental declaration additional information regarding the dates on which dental x-rays were taken of McGillvary's mouth; Rutgers's attempts to locate any of those x-rays; and detailing any other information Rutgers may have as to why the x-rays are not in McGillvary's medical file. *See Housemaster SPV*, 2022 WL 17904254, at *10 (directing party who allegedly failed to preserve subpoenaed documents to submit "a revised Certification" regarding whether she "deleted responsive documents or communications on or after . . . the date the [s]ubpoena was served" and "whether reasonable steps [were] or c[ould] be taken to retrieve deleted information.").

Accordingly, McGillvary's motion to enforce is granted in part and denied in part as detailed above.

---

"NO panorex available" throughout the chart. [Dkt. 117-3] at Ex. A. Moreover, McGillvary's medical record from April 15, 2021 states that he was "routed to DA for biennial exam / xray." *Id.* at Ex. B. These inconsistencies require additional clarification from Rutgers regarding when x-rays were taken and what steps were taken to review and/or locate the universe of x-rays relevant to this case.

## B. Motion to Suppress the Transcript of McGillvary's Deposition and to Compel Production of the Audio Recording of the Deposition

### 1. Summary

In his motion to suppress the transcript of his deposition and to compel the production of the audio recording of it, McGillvary argues that his deposition is "irregular" within the meaning of Federal Rule of Civil Procedure 32(d)(4) and should be suppressed. [Dkt. 97] at 4. In particular, McGillvary contends that the transcript is unreliable because (1) the deposition officer did not notify him when his transcript was available for review or otherwise solicit review or corrections in any other manner despite his request to review the transcript pursuant to Rule 30(e); (2) the deposition officer's certification is defective under Rules 30(e) and 30(f) because it does not state that McGillvary requested an opportunity to review the deposition or incorporate his errata,[4] and lacks a date of execution; (3) the deposition is not an accurate representation of McGillvary's testimony as evidenced by "[t]he sheer number of errors [in the transcript] that skew the record

---

[4] As background, counsel for Riez sent McGillvary a copy of his deposition transcript on March 12, 2025. [Dkt. 97-4.] Upon receipt of the transcript on March 14, 2025, McGillvary reviewed his deposition testimony and created an errata sheet. *Id.*; [Dkt. 97-6]. The errata largely consist of corrections to typographical and non-substantive errors which McGillvary alleges "skew the record to prejudice [him] and benefit [Riez]," and collectively "give rise to the doctrine of objective chances, as evidence that the deposition officer was clearly biased against [him] and engaged in extensive editing to prejudice him in his case." [Dkt. 97] at 2-3, 5-6; [Dkt. 97-6.] On March 24, 2025, McGillvary sent his "Notice of Changes" to the deposition officer via certified mail, and on March 28, 2025, Riez received notice of McGillvary's errata when he filed it as an attachment to his motion to suppress. [Dkt. 97-1] ¶ 12; [Dkt. 97-6]; [Dkt. 118] at Ex. A.

to prejudice [him] and benefit [Riez]," giving rise "to the doctrine of objective chances"; (4) the deposition officer was suffering from diminished capacity due to her allergies and/or was biased against McGillvary as evidenced by her head shaking, erroneous substitutions in the transcript, and failure to provide the audio recording of his deposition; and (5) neither the "original" nor audio recording of the deposition was "filed or lodged with the [C]ourt according to the requirements of Rule 30(f)." *Id.* at 4-7; *see also* [Dkt. 118] at 1-4, 6-9. Additionally, McGillvary seeks to compel the production of the audio recording of his deposition from either the deposition officer or Riez so he can make his own transcript of the deposition. [Dkt. 97] at 3.[5]

In opposition, Riez contends that McGillvary failed to serve a signed statement of corrections to the deposition officer, and that Riez himself had no notice of McGillvary's errata until the present motion was filed. [Dkt. 104] at 1. Additionally, Riez argues that the majority of McGillvary's corrections to his deposition transcript are purely "typographical errors that are not prejudicial to [McGillvary] or beneficial for [Riez]," and that in any event, nearly every correction "is based on the impossible assumption that 'the audio recording of this deposition shows that the latter phrase is what [he] actually said,'" but "no such recording is

---

5 McGillvary also argues that the alleged loss of the audio recording of his deposition is one of the irregularities that "render the transcript unworthy of confidence." [Dkt. 97] at 6-7; *see also* [Dkt. 118] at 4-6. As explained in more detail below, the creation, existence, and location of an audio recording are in question. Accordingly, the Court declines to suppress the transcript at this time based on a claimed loss of the audio recording.

available or has been provided to either party by the court reporter service." *Id.* at 1-2 (citing [Dkt. 97-6] at ¶¶ 1-79). Riez also contends that "[McGillvary]'s argument that the deposition should be suppressed because it was not 'filed or lodged with the Court' is entirely misplaced," as Rule 5(d)(1)(A) provides that depositions need not be filed "'until they are used in a proceeding or the court orders filing,'" and Rule 30(f)(4) "merely provides that ***when*** a deposition transcript is filed, notice of the filing must be given to all parties." *Id.* at 2 (citing [Dkt. 97] at 7; Fed. R. Civ. P. 5(d)(1)(A) and 30(f)(4)) (emphasis in original). Finally, with respect to McGillvary's request to compel the production of the audio recording of his deposition, Riez asserts that "without video services, no audio is captured during the deposition that can be provided," so there is no audio recording to produce. *Id.*

**2. Decision**

For the reasons set forth below, McGillvary's motion to suppress the deposition transcript is denied. The Court will hold in abeyance that aspect of his motion seeking to compel the production of any available audio recording of the transcript. The Court will discuss that issue with the parties during the November 20 telephone status conference.

**a. Suppression of McGillvary's Deposition Transcript**

As noted, McGillvary moves to suppress the deposition transcript pursuant to Rule 32(d)(4), which contemplates such a motion where there is an "error or irregularity" in how the officer before whom the deposition was taken "transcribed the testimony—or prepared, signed, certified, sealed, endorsed, sent, or otherwise

dealt with the deposition." Fed. R. Civ. P. 32(d)(4). As with other discovery- and evidentiary-related matters, whether to suppress a deposition transcript rests in the Court's sound discretion. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (noting that "'matters of docket control and conduct of discovery are committed to the sound discretion of the district court.'") (citations omitted); *Hilburn v. New Jersey Dep't of Corr.*, Civ. No. 7-6064 (WJM), 2012 WL 3133890, at *22 (D.N.J. July 31, 2012) (noting that "the use of [a] deposition is [ ] subject to generally applicable rules of evidence . . . and the trial court's discretion." (citations omitted)).

Here, McGillvary contends that his deposition transcript is "irregular" because it does not comply with Federal Rules of Civil Procedure 30(e) and 30(f), is riddled with purported inaccuracies, and the deposition officer was suffering from diminished capacity and/or was biased against him. [Dkt. 97] at 4-7. For the following reasons, the Court declines to suppress McGillvary's deposition transcript on any of these grounds.

**i. Alleged Violation of the Federal Rules**

The Court rejects McGillvary's arguments that his deposition transcript should be suppressed due to violations of Rules 30(e) and 30(f). Rule 30(e) provides, in relevant part, that

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available . . . (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a

> statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1). Additionally, the deposition officer "must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period." Fed. R. Civ. P. 30(e)(2). Rule 30(f)(1) further provides that the deposition officer must attach a certification "that the witness was duly sworn and that the deposition accurately records the witness's testimony" to the record of the deposition and "promptly send it to the attorney who arranged for the transcript or recording," who then "must store it under conditions that will protect it against loss, destruction, tampering, or deterioration." Fed. R. Civ. P. 30(f)(1). Finally, Rule 30(f)(4) states that "[a] party who files the deposition must promptly notify all other parties of the filing." Fed. R. Civ. P. 30(f)(4).

McGillvary contends that the deposition officer violated these Rules by failing to notify him when his transcript was available even though he asserted his right to review the transcript on the record during his deposition; because the officer's certification does not state that he requested an opportunity to review the deposition or incorporate errata; and because the certification lacks a date of execution. [Dkt. 97] at 4, 7; [Dkt. 118] at 1-4, 6-7. McGillvary also argues that the deposition should be suppressed because neither "[t]he original of the deposition" nor the audio recording of the deposition was "filed or lodged with the court according to the requirements of Rule 30(f)." [Dkt. 97] at 7.

First, although defense counsel, as opposed to the deposition officer, eventually notified McGillvary that his deposition transcript was available for review, this technical violation of Rule 30(e) does not justify suppression. There is no dispute that McGillvary was, in fact, given an opportunity to review and offer corrections to the transcript after he expressly reserved his right to review it, so "any discrepancy in the Rule 30(e) procedures is harmless error at most," as he suffered no prejudice from receiving the transcript from counsel rather than the officer. *Cohen's Fashion Optical, Inc. v. Cohen*, Civ. No. 94-297, 1996 WL 1493026, at *9 (W.D. Pa. Sept. 30, 1996) (citation omitted). Suppressing McGillvary's deposition based on "[t]he technical requirements of Rule 30(e) [is therefore] not justifiable or appropriate" under the circumstances. *Maloney v. Microsoft Corp.*, Civ. No. 09-2047 (AET), 2011 WL 5416340, at *3 (D.N.J. Nov. 4, 2011) (denying motion to strike errata sheet for procedural violation of Rule 30(e)).

Second, it is true that the deposition officer's certification lacks a date of execution and does not state that McGillvary requested an opportunity to review the deposition or incorporate errata to it. [Dkt. 97-5] at 101. However, the Rules do not require that the certification include a date of execution, and McGillvary points to no authority showing otherwise. *See* Fed. R. Civ. P. 30. Moreover, while "Rule 30 provides that, upon request, a deponent must be allowed thirty days after notification of the transcript's availability to review the transcript and sign a statement listing any changes . . . there is no requirement that the officer wait for the party-deponent's signature and errata sheet before delivering the transcript to

the opposing party." *Elliott v. Williams,* Civ. No. 21-2290, 2021 WL 12326772, *1 n.1 (E.D. Pa. Nov. 17, 2021) (citation omitted).

The fact that the deposition officer executed a certification and delivered the transcript to Riez before McGillvary's review is therefore not, in itself, a violation of the Rule, and as noted above, McGillvary ultimately was given the opportunity to review and offer errata to the transcript. In any event, any procedural deficiency here "is easily remedied with the submission of a new or supplemental certification." *Sivolella v. AXA Equitable Life Ins. Co.*, Civ. No. 11-4194 (PGS), 2015 WL 4461583, at *2 (D.N.J. July 21, 2015). Accordingly, the Court will direct the deposition officer to submit a revised certification that reflects McGillvary's errata submission and his request to review the transcript.[6]

Finally, the Court also resolves the Rule 30(f)(4) issue in Riez's favor, as he had no obligation to file the deposition transcript or recording with the Court because he has not yet used the deposition in this case. *See* [Dkt. 104] at 2 (citing

[6] While Riez argues that McGillvary's "unsupported revisions to his deposition testimony" do not "warrant the extreme result of suppressing his entire deposition," he does not assert that McGillvary's errata should be struck or ignored. [Dkt. 104] at 2. Accordingly, because McGillvary complied with Rule 30(e)'s procedural requirements, and because his proposed changes appear largely to be corrective in nature and Riez does not challenge them, the Court will permit all of McGillvary's asserted errata to be attached to the deposition transcript. *Intervet, Inc. v. Mileutis Ltd.*, Civ. No. 15-1371 (ZNQ), 2023 WL 2266411, at *6 (D.N.J. Feb. 28, 2023) (allowing corrective errata entries where opposing party failed to raise "a specific challenge or objection"). That said, nothing in this Order should be understood to state a view, one way or another, on the accuracy and veracity of McGillvary's proffered errata.

Fed. R. Civ. P. 5(d)(1)(A) (depositions "must not be filed until they are used in the proceeding or the court orders filing"); Fed. R. Civ. P. 30(f)(4)).

Accordingly, the Court denies McGillvary's request to suppress the deposition transcript due to asserted violations of the Federal Rules of Civil Procedure, but will direct the officer to file a revised certification.

**ii. Purported Inaccuracies in Deposition Transcript**

McGillvary argues that the number of inaccuracies in his deposition transcript warrant suppression. The Court disagrees; as Riez puts it, the majority of the purported inaccuracies "are not material to the matter and are, at most, typographical errors that are not prejudicial to [McGillvary] or beneficial for [Riez]." [Dkt. 104] at 1. The Court appreciates that some of McGillvary's proposed changes involve excerpts regarding material facts, *see, e.g.,* [Dkt. 97-6] ¶¶ 1, 28-29, 59-60, but having reviewed the entire transcript and McGillvary's statement of proposed corrections, the Court observes that he takes issue almost exclusively with minor mis- or non-transcriptions of words and short phrases in the transcript—including for those 'material' paragraphs that he argues "give rise to the doctrine of objective chances." *See id.*; [Dkts. 97-5, 97-6], *passim*. The Court is not persuaded by McGillvary's argument that these inaccuracies—no matter how numerous—unfairly prejudice him. *Sears v. Mooney*, Civ. No. 17-50, 2019 WL 6726839, at *2 (M.D. Pa. Dec. 11, 2019) (declining to exclude deposition transcript despite plaintiff's allegation that he "discovered a plethora of pertinent testimony" that was "erroneously or illegally omitted from the recording or transcription of said

deposition" where plaintiff "t[ook] issue with misspelled words and the omission of words and phrases in the transcript.").

Moreover, while the proposed changes set forth in paragraphs 42, 47, 52, and 63 of McGillvary's errata concern more than asserted transcription errors, these purported inaccuracies do not warrant suppression of the entire deposition transcript either.  *See* [Dkt. 97-6] ¶¶ 42, 47, 52, 63.  With respect to paragraphs 42 and 52, McGillvary points out that some of his testimony was misattributed to counsel, and vice versa.  *Id.* ¶¶ 42, 52; [Dkt. 97-5] at 50:19-25, 73:23.  However, "the Court [can] consider [the errata sheet] when evaluating [any forthcoming] motion[s] for summary judgment" to the extent the corrections are relevant, so any prejudice from these purported errors is therefore minimal.  *Sears*, 2019 WL 6726839, at *2.  Moreover, "unless and until" this deposition testimony "is at issue in any motion or proceeding before this Court, [McGillvary] cannot demonstrate any prejudice" resulting from these alleged errors, so the "request to suppress the use of his deposition testimony is, at best, premature."  *Griffin v. Johnson*, Civ. No. 13-1599, 2017 WL 3383041, at *2 (E.D. Cal. Aug. 7, 2017).

As to paragraphs 47 and 63, McGillvary complains that certain exchanges were omitted from the record.  [Dkt. 97-6] ¶¶ 47, 63.  Specifically, in paragraph 47, McGillvary states that the transcript omits "an exchange between Keith Ronan [counsel for Rutgers] and [himself]" in which he "objected to the seating arrangements"; and in paragraph 63, he asserts that the transcript omits "descriptions of [his] symptoms, as well as an exchange between [him]self and the

court reporter" regarding her alleged headshaking and allergies. *Id.*; *see* [Dkt. 97-5] at 61:1-3, 80:11-14. Even indulging McGillvary's unsupported say-so that these interactions happened as he describes, they have little to nothing to do with the active claims in this case, and once again, McGillvary's errata may be considered alongside the transcript itself, alleviating any possible prejudice. *See Sears*, 2019 WL 6726839, at *2. The Court will therefore not order the "drastic remedy" of suppressing the transcript on these grounds. *Grant v. Corral*, Civ. No. 19-1495, 2021 WL 826203 (E.D. Cal. Mar. 4, 2021), *report and recommendation adopted*, 2021 WL 2457582 (E.D. Cal. June 16, 2021) (denying motion to suppress deposition transcript) (citing *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1509-10 (9th Cir. 1991)).[7]

**iii. Alleged Issues Regarding the Deposition Officer**

Finally, the Court also rejects McGillvary's argument that his deposition transcript should be suppressed because the deposition officer was suffering from diminished capacity and/or was biased against him. *See* [Dkt. 97] at 5-7; [Dkt. 118] at 9. The Court disagrees that the court reporter lacked capacity because she was experiencing allergies, and McGillvary has not pointed to (nor has the Court identified) any relevant authority on this issue. Moreover, McGillvary has not

---

7 In addition, McGillvary's objection regarding the seating arrangement is reflected in the transcript in a conversation with defense counsel, so the exclusion of his alleged conversation with Mr. Ronan is harmless. [Dkt. 97-5] at 60:22-61:2. Further, McGillvary does not identify what "descriptions of [his] symptoms" were even omitted from the record. [Dkt. 97-6] ¶ 63.

adequately supported his claim that the deposition officer harbored some sort of animosity towards him that would lead her to deliberately tamper with his deposition transcript.

Indeed, the main piece of "evidence" that McGillvary points to are the sheer number of purported inaccuracies in the transcript, but as noted above, the errors McGillvary identifies in his errata largely involve minor mistranscriptions of words and phrases, and the Court has no basis to conclude that any errors were made on purpose. *Lawson v. Banta*, Civ. No. 18-3670, 2020 WL 6271264, at *1-2 (E.D. Pa. Oct. 26, 2020), *aff'd*, No. 20-3444, 2022 WL 1772997 (3d Cir. June 1, 2022) (declining to suppress deposition transcript where plaintiff's objections "focused on typographical or grammatical errors within the document" and plaintiff "ha[d] not presented any evidence that would suggest that the court reporter or [d]efendants sought to falsify the contents of the deposition."). Importantly, the deposition officer certified that the transcript "is a true and accurate transcript of the stenographic notes of the deposition of [McGillvary]," and that she is "neither a relative, nor employee, nor attorney or counsel to any parties involved; that [she is] neither related to any of the parties to this action by blood or by marriage, and [is] not financially interested in this matter." [Dkt. 97-5] at 101. In light of that certification, McGillvary has not established that the officer harbored any bias against him. The Court accordingly denies his request to suppress the transcript for that reason.

* * *

McGillvary's request to suppress his deposition transcript is denied.

**b. Request to Compel the Production of the Audio Recording of McGillvary's Deposition**

Federal Rule of Civil Procedure 30(b) provides that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party" that states, among other things, "the method for recording the testimony." Fed. R. Civ. P. 30(b)(1) and 30(b)(3)(A). Rule 30(b) also provides that "any party may designate another method for recording the testimony in addition to that specified in the original notice" with "prior notice to the deponent and other parties." Fed. R. Civ. P. 30(b)(3)(B). Additionally, Rule 30(f)(3) states that the deposition officer "must retain the stenographic notes of a deposition taken stenographically or a copy of the recording of a deposition taken by another method," and that "[w]hen paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent." Fed. R. Civ. P. 30(f)(3).

Here, the notice of McGillvary's deposition stated that "[a] Court Reporter . . . is permitted to attend the deposition and bring a steno machine, a laptop computer, tape recorder, and/or microphone (and the various cords and plugs for such equipment)," which seems to imply that the deposition may be recorded using either stenographic or audio recording means. [Dkt. 83] at 1. McGillvary points to the notice, defense counsel's alleged representation that an audio recording would be produced, and the fact that the deposition officer brought a microphone, plugged it into her steno machine, and stated that she was recording as evidence that an audio

recording of the deposition exists.  [Dkt. 97] at 6-7; [Dkt. 97-1] ¶ 5; [Dkt. 118] at 4-6.

Accordingly, he argues that the recording must be provided to him pursuant to

Rule 30(f)(3).  *Id.*  Riez, though, asserts that he "contacted the court reporting

service, Veritext, to inquire about the audio recording, and was told by Veritext that

without video services, no audio is captured during the deposition that can be

provided."  [Dkt. 104] at 2.  Accordingly, Riez states that he "does not have any

audio recording of the deposition, so [h]e cannot provide it to [McGillvary]."  *Id.*

It is not clear, from this vague statement, whether an audio recording of the

deposition was ever generated in any way, and if it was, whether it still exists.

The Court, of course, cannot compel Riez to produce something that does not exist.

At the same time, however, Riez's representation is not clear whether Veritext

generated and still maintains an audio recording of the deposition.  Counsel for Riez

shall be prepared, after further consulting with Veritext, to discuss during the

November 20 telephone conference whether an audio recording of the deposition

was generated in any format, and if one was created, whether it still exists.

The Court will hold McGillvary's request for the audio recording in abeyance

pending that discussion.

### C.    Motion to Hold NJDOC in Contempt and to Compel the Production of NJDOC Documents

#### 1.    Summary

McGillvary seeks an order holding NJDOC in contempt for failing to comply

with the February 6 Order directing it to take action in response to the NJDOC

subpoena and compelling the production of the requested documents, including entries of logbooks for NJSP West Compound 6 Right, NJSP traffic control, and NJSP North Compound Clinic, in which McGillvary or Riez appear. [Dkt. 115] at 5-8, Ex. B. In McGillvary's opening brief—filed before he received NJDOC's production of documents—McGillvary contended that NJDOC failed to comply with the February 6 Order "without adequate excuse" because it did not provide the requested documents to him, or otherwise respond to his requests, within the time limits set forth in that Order. *Id.* at 7-8. In his reply brief—filed after he received NJDOC's production—McGillvary asserts that NJDOC failed to investigate adequately and produce appropriate documents in response to his subpoena despite its claim that it conducted a thorough investigation. [Dkt. 129] at 6-9. In support of this argument, McGillvary points to the fact that his medical records reflect that he was present at certain prison facilities on specific dates, yet NJDOC did not provide corresponding logbooks or travel records for those days. *Id.*; [Dkt. 130].

In response, NJDOC asserts that it "served responses to [McGillvary]'s request for logbook entries and has otherwise complied with the Court's Orders in this matter." [Dkt. 121] at 2. Indeed, NJDOC generally objected to McGillvary's requests regarding both Riez and himself on the grounds that they were "overly burdensome and disproportionate to the needs of th[e] litigation"; "risk[ed] disclosing confidential procedures and movements within the secure [prison] environment"; would provide information to McGillvary "about other incarcerated persons"; and were irrelevant. *See id.*; [Dkt. 129-2] at Ex. B. Notwithstanding

these objections, however, NJDOC made a small production of documents to McGillvary. [Dkt. 129-2] at Exs. B, C. Accordingly, NJDOC argues that the motion should be denied or administratively terminated. [Dkt. 121] at 2.

### 2. Decision

For substantially the same reasons set forth in the Court's Order denying McGillvary's request to hold NJDOC in contempt for noncompliance with the February 6 Order, *see* [Dkt. 113] at 1-2, the Court denies his request to hold NJDOC in contempt now. As the Court previously explained, NJDOC filed a status letter regarding its review and production within 21 days of receiving the list of dates from McGillvary and thereafter produced documents to him, and therefore complied with the February 6 Order. *Id.* Contempt is, accordingly, unwarranted.

That said, the Court has reviewed NJDOC's production and concludes that relevant documents appear to have been omitted or redacted from the production without adequate explanation. Given its generalized objections, it seems that NJDOC may have withheld documents (or redacted them) based on security concerns. NJDOC asserted a slew of objections to McGillvary's requests regarding both Riez and McGillvary himself. [Dkt. 121] at 2; [Dkt. 129-2] at Ex. B; *see also* [Dkt. 100] at 34:22-35:18. Despite these similar objections, however, NJDOC only produced documents related to Riez, not McGillvary.[8] But NJDOC did not

---

[8]    This is so even though it appears that records similar to those produced for Riez also exist for McGillvary   For instance, there is a medical record reflecting McGillvary's December 6, 2021 doctor's office visit, but no corresponding logbook

specifically explain why. [Dkt. 129-2] at Exs. B, C. It is therefore unclear why NJDOC produced documents responsive to some of McGillvary's requests, but not others. In addition, the documents that NJDOC did produce are heavily redacted, and NJDOC has not sufficiently explained what information is included in these documents that warrants redaction.

To be clear, the Court appreciates that NJDOC has institutional security concerns, particularly insofar as it concerns inmate movement within the prison facility. But if NJDOC is going to produce some documents, but redact and/or withhold others, it must explain its reasons for doing so *with specificity* so that the Court can determine what documents exist in the first place, and then decide whether they have been properly withheld or redacted. *Rega v. Beard*, Civ. No. 08-156, 2010 WL 1253531 (W.D. Pa. Mar. 24, 2010) (noting that plaintiff was entitled to daily log documents relevant to the case, but if the producing party "believe[d] that disclosure of [an otherwise relevant] entry w[ould] jeopardize security," it could "redact that entry, *but must note a redaction due to institutional security*." (emphasis added)).[9]

Accordingly, the Court will direct NJDOC to re-review the logbook entries and travel records for the dates that McGillvary provided, *see* [Dkt. 115] at Ex. B,

entries have been produced for that date showing his presence at the facility. *Compare* [Dkt. 129-2] at Ex. C *with* [Dkt. 130].

9 The Court does not understand NJDOC to have withheld any materials based on relevance or burden objections. *See* [Dkt. 129-2] at Exs. B, C. To the extent that NJDOC has withheld any documents on those grounds, the objections are overruled.

and thereafter produce to him all relevant entries reflecting his and Riez's respective locations on those dates, with appropriate redactions. If NJDOC seeks to redact any entries reflecting McGillvary's or Riez's locations on the relevant dates and times, it shall file via CM/ECF a letter stating its grounds for doing so, and submit to the Court *ex parte* the relevant records for the Court's *in camera* review. If, by contrast, NJDOC locates no additional responsive records with McGillvary's or Riez's locations, it shall file a sworn declaration from an official with knowledge that describes its diligent review of the relevant records consistent with this Order. McGillvary's motion is granted to the limited extent set forth above; otherwise, it is denied.[10]

## III. CONCLUSION

For the reasons set forth above, it is on this **17th** day of **October**, **2025**,

**ORDERED** that McGillvary's motion to enforce the subpoena directed to Rutgers, or in the alternative, for designated facts to be taken as established as a discovery sanction for Rutgers' alleged spoliation is GRANTED in part and DENIED in part as follows:

- Rutgers shall, **within 21 days of the date of this Order**, file via CM/ECF a sworn declaration from an official with knowledge explaining Rutgers's attempts to locate McGillvary's x-rays and detailing any information it may have regarding the existence and

10 McGillvary's motion appears to renew his earlier request for the production of NJDOC internal administrative Memorandums regarding the Covid-19 lockdown. [Dkt. 115] at 5. The Court previously denied McGillvary's request for such documents, *see* [Dkt. 87] at 1; [Dkt. 100] at 43:23-44:7, and it now denies again the motion to extent that it seeks those documents.

location of the x-rays, and why they are not in McGillvary's medical file.

- Rutgers shall include in the declaration an explanation of Rutgers's policies and procedures regarding the generation and retention of dental medical records taken of inmates incarcerated at NJSP, including an explanation of the "medical reference file" and the "paper medical chart." The declaration also shall certify that all relevant medical records, whether electronic or hard copy, have been produced to McGillvary. To the extent there are any relevant dental records that have not been produced, Rutgers shall produce them.

- McGillvary's motion is otherwise denied without prejudice.

**IT IS FURTHER ORDERED** that McGillvary's motion to suppress the transcript of his deposition is DENIED; and it is further

**ORDERED** that the deposition officer shall execute a revised certification to reflect McGillvary's request to review the transcript, and attach McGillvary's errata to the certification page and deposition transcript; and it is further

**ORDERED** that the Court will hold in abeyance that aspect of McGillvary's motion seeking to compel production of the audio recording of his deposition; and it is further

**ORDERED** that McGillvary's motion for an order holding non-party NJDOC in contempt is DENIED; and it is further

**ORDERED** that McGillvary's motion to compel NJDOC's compliance with the subpoena directed to it is GRANTED in part and DENIED in part. NJDOC shall, **within 21 days of the date of this Order**, re-review the relevant records and logbook entries for the dates provided by McGillvary, *see* [Dkt. 115] at Ex. B, and produce all relevant entries, with appropriate redactions as needed. If NJDOC

seeks to redact any entries reflecting McGillvary's or Riez's locations on the relevant dates and times, it shall file via CM/ECF a letter stating with specificity its grounds for its proposed redactions, and submit to the Court *ex parte* the relevant records for the Court's *in camera* review.  If NJDOC locates no additional responsive records, it shall file a sworn declaration from an official with knowledge that describes its diligent review of the relevant records consistent with this Order.  McGillvary's motion is otherwise denied.

**IT IS FURTHER ORDERED** that McGillvary's motion for leave to file a second amended complaint, or alternatively, to file a supplemental complaint is ADMINISTRATIVELY TERMINATED, without prejudice, pending further proceedings; and it is further

**ORDERED** that the Court will hold a telephone status conference on **November 20, 2025** at **2:00 p.m.**; dial-in information will be provided.  The parties shall be prepared to discuss McGillvary's motion for leave to file an amended or supplemental complaint; whether an audio recording of McGillvary's deposition was generated in any format, and if one was created, whether it still exists; the status of the directives set forth herein; and proposed amended deadlines to the pretrial schedule.

**IT IS FURTHER ORDERED** that McGillvary shall refrain from filing any responses or objections to this Order, or any other motion or discovery request, pending the November 20 telephone status conference; and it is further

**ORDERED** that the Clerk shall terminate the motions filed at Docket Entries [93, 97, 101, and 115].

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE