Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

RECEIVED

MAY 1 2 2026

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALEB L. MCGILLVARY<br>    PLAINTIFF<br><br>V.<br><br>RAHMO REIZ<br>    DEFENDANT | ) CIVIL ACTION NO.<br>) 3:22-cv-06430-MAS-JBD<br>) Hon. Michael A. Shipp, U.S.D.J.<br>) Hon. J. Brendan Day, U.S.M.J.<br>)<br>)<br>) |

### WRITTEN OBJECTION TO MAGISTRATE'S ORDER ECF 174

Caleb L. McGillvary ("Plaintiff") hereby objects in writing to the magistrate's order, ECF 174. Plaintiff makes this objection pursuant to D.N.J. L. Civ. R. 72.1, Fed. R. Civ. P. 72, and the Magistrate's Act, 28 U.S.C. 636. Plaintiff incorporates by reference his papers and oral argument in support of his subpoenas, and sets forth fully herein in support of this objection. Additionally, Plaintiff objects to the portions of the order which he believes are clearly erroneous and contrary to law as follows:

### Grounds for Objections

Plaintiff Caleb L. McGillvary (Plaintiff) sets forth this argument in support of his objections.

NJDOC has represented to the Court that they are "no longer in possession" of Wing Officer Travel Logs (WOTLs) and Traffic Control Logs (TCLs) which this Court has previously held were

1

relevant and material. At no point in the Magistrate's Order did the Magistrate address these two crucial documents. The custodian of these records has already filed a declaration which makes them a witness, and the Magistrate's order doesn't address the value of impeachment evidence against this witness. The NJDOC and Defendant will almost certainly argue that the destruction or loss of these documents was either a mistake, an accident, or incidental to the usual course of business; but Plaintiff avers it was none of these, it was deliberate, it was illegal. State law prohibits the destruction of these prison record documents prior to five years elapsing from their creation. See N.J.S.A. 47:3-9 (Prison records are public records, which must be kept for at least 5 years); N.J.S.A. 47:1-14 (Destruction of these records prior to 5 years elapsing is prohibited by law).

The subpoenas ask for evidence, video and documentary, which is reasonably believed to show that non-party New Jersey Department of Corrections (NJDOC) has been engaging in conduct deliberately to disrupt Plaintiff's ability to litigate, and has thereby manifested a bias agaist him. This includes evidence of the NJDOC, through its officers: Disabling the prison kiosk whereby Plaintiff receives updates from the docket, threatening Plaintiff with rape or criminal charges for using the law library, ripping open his outgoing legal mail and refusing to process it, dumping urine onto the kiosks, telling another inmate to fabricate evidence against Plaintiff, and more. So the eevidence requested is important impeachment evidence against the

2

custodian of the WOTL and TCL, useful for showing bias and a

habit or routine organizational practice of obstruction.

### Legal Argument

**POINT I: THE REQUESTED EVIDENCE HAS SUBSTANTIVE VALUE TO SHOW THE NJDOC'S ROUTINE ORGANIZATIONAL PRACTICE OF DISRUPTING INMATE LITIGATION AGAINST STATE EMPLOYEES, SUCH AS DEFENDANT, AND CAN SHOW THE NJDOC RENDERED PRISON RECORDS UNAVAILABLE FOR THAT REASON; AND ALSO HAS IMPEACHMENT VALUE AGAINST THE NJDOC WITNESS WHO WILL BE CALLED TO EXPLAIN THE MISSING WING OFFICER TRAVEL LOGS AND TRAFFIC CONTROL LOGS; WHICH  RECORDS HAVE BEEN HELD RELEVANT AND MATERIAL TO THE CLAIMS IN THIS ACTION**

**A. STANDARD OF REVIEW**

A court may quash or modify a subpoena only if it finds that the

movant has met the heavy burden of establishing that compliance

with the subpoena would be unreasonable and oppressive. Fed. R.

Civ. P. 45(c)(3)(A)(iv); see Doe v. Schuykill County Courthouse,

2023 U.S. Dist. LEXIS 55645 at *7 (M.D.Pa. Mar. 30, 2023).

However, when assessing a motion to quash "a court must also

consider the fact that Rule 26(b)(1) provides that discovery need

not be confined to matters of admissible evidence, but may

encompass that which appears reasonably calculated to lead to the

discovery of admissible evidence." Ibid. (Citing Fed. R. Civ. P.

26(b)(1)). Witness impeachment is a time-honored basis for

discovery, particularly in a case where witness credibility will

be crucial at trial. Id. at *7-8; see also Hickman v. Taylor, 329

U.S. 495, 511 (1947) (non-privileged information in attorney's

files is discoverable because: "[s]uch written statements and

documents ... might be useful for purposes of impeachment or

corroboration"). The advisory committee noted, **"[I]nformation**

**that could be used to impeach a likely witness, although not**

3

**otherwise relevant to the claims or defenses, might be properly discoverable."** Fed. R. Civ. P. 26, advisory committee's note (2000); see also Id. (2015) (noting that a change in the language of Rule 26(b)(1) did not foreclose discovery of impeachment information).

Additionally, evidence that shows the bias of a witness is discoverable. See United States v. Abel, 469 U.S. 45, 52 (1984) ("bias is a term used in the common law of evidence to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest"); see also Terry v. McNeil-PPC, Inc., 181 F. Supp. 3d 278, 294 n.26 (E.D.Pa. 2016).

## B. ANALYSIS

Evidence showing numerous NJDOC officers engaging in deliberately obstructive and antagonistic behavior towards Plaintiff temporally proximal to hearings and deadlines in this action would be useful as impeachment evidence, and to show their bias against Plaintiff. It would also be substantive evidence of a routine organizational practice of NJDOC obstructing and interfering with civil rights lawsuits against State employees who work at the prison, providing a reason why the WOTLs and TCLs vanished into thin air like the x-rays and deposition audio. See F.R.E. 406 (Such practices are substantive evidence).

The doctrine of objective chances tilts towards the requested evidence's substantively showing, through temporal

4

proximity indicative of causation, that the NJDOC, through its officers, is actively trying to interfere with Plaintiff's ability to litigate in this case. On November 5, 2025, this Court had ordered the NJDOC and Rutgers to file declarations about the production and retention of documents, including the WOTLs and TCLs. On this very day, an NJDOC officer switched off the router to the kiosks on the unit where Plaintiff is confined. On November 9, 2025 another officer who wasn't in on it switched the router back on, then NJDOC officers poured urine onto them in the middle of the night to disable them again. A month later, when the extension of time provided by this Court to the NJDOC was about to run up, the NJDOC officers told another inmate to fabricate evidence against Plaintiff. Even at the hearing regarding these subpoenas, the NJDOC placed Plaintiff in the law library computer lab instead of the private room wherein they had held every other telephone hearing in this case: Forcing Plaintiff to talk about NJDOC officers' threats of rape against his person, in front of 15 other inmates, many of whom are incarcerated for sexual crimes. The NJDOC has NEVER, in over 30 years, EVER made another inmate have a court hearing in the law library computer lab. This was after an intense search of his cell the night before by NJDOC officers, who disparately targeted Plaintiff for having privacy blocks on his cell gate so that other inmates can't watch him use the toilet, even though other inmates on his unit have such blocks but weren't targeted. Those NJDOC officers told Plaintiff he has a lot of legal mail, then said in regards to this very case, "Your conditions of

5

confinement are your own fault." This was recorded on badge cam, including the audio of these officers specifically saying that in regards to this case, the very night before the hearing, which disrupted Plaintiff's ability to get a good night's sleep prior to the hearing.

The substantive showing of the requested evidence, of the routine organizational practice of obstruction of this case by the NJDOC, could persuade a reasonable juror that the NJDOC destroyed the WOTLs and TCLs in accordance with this practice. It could also show this same fact through the doctrine of objective chances.

Even aside from its substantive value, using this evidence to impeach any NJDOC witness called to testify regarding the missing WOTL and TCL, would be very effective at showing the bias of that witness. After all, the NJDOC officers are each part of the organization which has this routine practice. Showing numerous NJDOC officers, in their uniforms, taking actions to subvert this proceeding including dumping urine on kiosks, would be about as impeaching of an NJDOC officer as you can get.

### CONCLUSION

For all the foregoing reasons, Plaintiff has shown that the requested evidence is relevant and material, both for its substantive value and its use as impeachment of NJDOC witnesses expected to be called at trial, and to show their bias. It was therefore clear error of the magistrate to quash the subpoena, or in the alternative it would result in a manifest injustice to

6

deprive him of impeachment evidence against the custodian of the WOTL and TCL.

DATE: 5/6/26

_____

Caleb L. McGillvary, Pro Se

#1222665/SBI#102317G NJSP

PO Box 861, Trenton, NJ 08625