UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALEB L. MCGILLVARY, | Civ. No. 22-6430 (MAS)(JBD) |
| Plaintiff, | **MEMORANDUM ORDER** |
| v. | |
| RONALD RIEZ, *et al.*, | |
| Defendants. | |

Before the Court is a motion filed by *pro se* plaintiff Caleb L. McGillvary for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1). [Dkt. 147.] For the reasons set forth below, McGillvary's motion is denied without prejudice.

\*

The Court writes for the parties and accordingly assumes familiarity with the case. Because the Court discussed extensively the background and procedural history of this action in its recent Memorandum Order granting in part and denying in part McGillvary's motion for leave to file an amended or supplemental complaint, [Dkt. 173], the Court does not repeat it here. Where appropriate, the Court addresses below the relevant facts necessary to resolve the present motion.

\*

Although there is no constitutional right to counsel for litigants in a civil matter, 28 U.S.C. § 1915(e)(1) gives the Court discretion to "request an attorney to represent any person unable to afford counsel." *See Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citations omitted). However, "[b]efore the court is justified

in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (citations omitted). Where the Court has determined, as a threshold matter, "that the plaintiff's claim has arguable merit in fact and law," the Court then must consider several additional (and non-exhaustive) factors (the "*Tabron* factors") to determine whether appointment of *pro bono* counsel is appropriate. *Id.*; *see also Parham*, 126 F.3d at 457.

The *Tabron* factors are: (1) the ability of the plaintiff "to present his or her case," and, where the plaintiff is a prisoner, the "restraints placed upon him or her by confinement"; (2) the difficulty and complexity of the legal issues in the matter; (3) the amount of factual investigation required and the plaintiff's ability to pursue that factual investigation, and whether the claims will require extensive discovery and compliance with complex discovery rules; (4) whether the issues will rely heavily on testimony and thus turn on credibility determinations; (5) whether expert witness testimony will be required; and (6) whether the plaintiff can attain and afford to retain counsel. *Tabron*, 6 F.3d at 156; *Parham*, 126 F.3d at 457.

The Court must weigh these and any other relevant factors against the extreme value of a *pro bono* lawyer's time, ever mindful that "[v]olunteer lawyer time is a precious commodity . . . . Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." *Tabron*, 6 F.3d at 157 (second alteration in original) (quoting *Cooper v.*

*A. Sargenti  Co.*, 877 F.2d 170, 172 (2d Cir. 1989)).  Thus, "appointment of counsel remains a matter of discretion . . . and the determination must be made on a case-by-case basis." *Id*. at 157-58.

As a threshold matter, McGillvary's claims here have arguable merit in fact and law.  McGillvary's Eighth Amendment deliberate indifference claim survived a motion to dismiss, and the Court recently permitted McGillvary to add negligence and fraudulent concealment claims in a supplemental complaint because they were not clearly futile.  *See* [Dkts. 36, 37, 173].  The Court, accordingly, proceeds to the *Tabron* factors.

The first factor—the plaintiff's ability to present his own case—requires the Court to "consider the plaintiff's education, literacy, prior work experience, and prior litigation experience," as well as whether the plaintiff is able to understand English.  *Tabron*, 6 F.3d at 156.  As evidenced by the record in this case, McGillvary is able to read, write, understand English, and to understand the legal process. McGillvary contends that he "is unable to properly present his case, because he must present the testimony of multiple witnesses in a swearing contest,  but lacks the experience nor even the technical wherewithal to do so." [Dkt. 147] at 31.  Yet McGillvary has, at every turn, demonstrated his ability to pursue his claims and advocate for himself.  Indeed, he has pursued discovery, generally followed court procedures, made and defended discovery motions, argued orally and competently, filed objections, and generally pursued his case, demonstrating his ability to navigate federal civil procedure generally and this case specifically.  Overall, the

docket reflects, at least at this stage, that McGillvary is competent, literate, and capable of representing himself. *See Gordon v. Gonzalez*, 232 F. App'x 153, 157 (3d Cir. 2007) (not precedential) ("The numerous *pro se* filings in this case alone evince [the plaintiff's] familiarity with the legal system," which weighs against appointing counsel).

Where, as here, the plaintiff is incarcerated, the Court should also consider the restraints placed on him by his imprisonment, as well as whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone, and computer. *Burt v. Hicks*, Civ. No. 20-19459 (SAK), 2021 WL 3207729, at *2 (D.N.J. July 29, 2021) (citing *Montgomery v. Pinchak*, 294 F.3d 492, 498 (2002); *Parham*, 126 F.3d at 459). On this point, McGillvary indicates that the prison law library does not contain all of the materials he needs to advance his case, including "training manuals [or] guides to cross examination," and that law library staff has restricted his access to certain library resources. [Dkt. 147] at 25-26. But these stated limitations do not appear to have restricted McGillvary's ability to litigate his case thus far, as shown by his extensive filings throughout this lawsuit. The Court thus does not find that McGillvary's incarceration has uniquely impeded his ability to present his case. *See Porter v. Dooley*, Civ. No. 09-6068 (AMD), 2011 WL 13142465, at *5 (D.N.J. May 13, 2011) (denying request for appointment of counsel despite plaintiff's limited library access, because plaintiff had sufficient access to the courts as demonstrated by his previous filings). The first *Tabron* factor accordingly weighs strongly against the appointment of counsel at this time.

The second *Tabron* factor requires the Court to consider "the difficulty of the particular legal issues," especially where the law is not clear. *Tabron*, 6 F.3d at 156. Under this factor, courts also consider the "proof going towards the ultimate issue and the discovery issues involved." *Parham,* 126 F.3d at 459. McGillvary argues that the "recently held cause of action [for] '[c]onspiracy of [s]ilence' complicates the issues underlying the already-complex destruction of medical records-[based claims for negligence, fraudulent concealment, and medical malpractice]." [Dkt. 147] at 32-33. McGillvary also contends that "the need to *voir dire* multiple expert witnesses . . . and the [accompanying] intricacies of the legal issues and evidentiary doctrines involved" further renders this case legally complex. *Id.* at 33.

Notwithstanding McGillvary's arguments, the issues presented in McGillvary's operative claims—Eighth Amendment deliberate indifference, negligence, and fraudulent concealment—are relatively straightforward.[1] The fraudulent concealment and negligence claims rest on well-settled New Jersey law. *See, e.g.*, *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320-21 (3d Cir. 2014) (noting that New Jersey recognizes a claim for fraudulent concealment as a remedy for spoliation and setting forth the necessary elements of such a claim) (citing *Rosenblit v. Zimmerman*, 166 N.J. 391, 406-07 (2001)); *Gilleski v. Community*

---

[1]    McGillvary argues that his claims of conspiracy and medical malpractice are particularly complex, but those causes of action are not part of the operative amended complaint or his recently filed supplemental complaint. *See generally* [Dkts. 3, 36, 37, 173, 180.]

5

*Medical Center,* 336 N.J. Super. 646, 652 (App. Div. 2001) (holding that a plaintiff may maintain a claim based on alleged spoliation of evidence under traditional negligence concepts). Moreover, it is evident that McGillvary well understands these claims and the law regarding them, given his extensive discussion of them in his motion for leave to amend. *See* [Dkt. 101.] Separately, McGillvary has vigorously litigated his Eighth Amendment deliberate indifference claim since the outset of this case without counsel. The Court is confident that McGillvary is capable of proceeding *pro se* and understands the nature of his claims and their underlying facts and circumstances. Thus, the second *Tabron* factor weighs against the appointment of counsel. *See Hicks*, 2021 WL 3207729, at *3 (finding that second *Tabron* factor weighed against the appointment of counsel where the plaintiff had "demonstrated an awareness of the law and the proofs needed to support his allegations.").

The third *Tabron* factor—the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation—also weighs against appointing *pro bono* counsel. "[T]he Third Circuit has stated that where a person is confined to prison and that confinement limits his ability to conduct discovery, great weight will be given to the decision to appoint counsel." *Nadal v. Christie*, Civ. No. 13-5447 (RBK), 2013 WL 6331058, at *3 (D.N.J. Dec. 4, 2013) (citing *Montgomery*, 294 F.3d at 503; *Tabron*, 6 F.3d at 156). To date, McGillvary has had little trouble pursuing fact discovery without counsel; he has served standard party discovery requests and subpoenas, as well as several motions to

6

compel and to enforce his requested discovery without issue.  Although McGillvary expresses concerns regarding his ability to conduct depositions given his incarceration and lack of experience "in presenting evidence or cross-examination," [Dkt. 147] at 33-35, there is little to suggest that conducting depositions will present an insurmountable challenge for McGillvary.  Indeed, "[c]ourts have repeatedly recognized that a plaintiff's incarceration [alone] does not 'render him unable to pursue any investigation' or 'preclude him from conducting depositions.'"  *Ryan v. Robinson*, Civ. No. 22-1175 (MJS), 2023 WL 3034130, at *3 (D.N.J. Apr. 21, 2023) (collecting cases).  Moreover, McGillvary's "lack of legal knowledge and training is common among *pro se* litigants and is not by itself enough to warrant the appointment of counsel," and McGillvary has ably investigated his case thus far despite his lack of experience with litigation.  *Nickens v. Mercer Cnty. Corr. Ctr.*, Civ. No. 20-14489 (AME), 2021 WL 3206826, at *2 (D.N.J. July 28, 2021) (citation omitted).  The Court is satisfied that McGillvary is able to continue properly pursuing a factual investigation of his case without the assistance of *pro bono* counsel at this time.  The third *Tabron* factor therefore weighs against the appointment of counsel.

The fourth *Tabron* factor "weighs towards appointing counsel if the case is 'solely a swearing contest.'"  *Jones v. United States*, 2015 WL 7432349, at *3 (D.N.J. Nov. 23, 2015) (citing *Parham*, 126 F.3d at 460).  McGillvary argues that this factor favors appointment because his deposition transcript contains "at least seven" errors "upon which this case could rise or fall" and certain medical records

7

supporting his claims have been lost, reducing the proceedings to a credibility dispute that he cannot fairly navigate without counsel. [Dkt. 147] at 35-37. The Court recognizes that some of the disputed factual issues in this case may lend themselves to a swearing contest, including, in particular, the dispute over the destruction of McGillvary's medical records. Although the outcome of this case may not turn entirely on a swearing contest, the Court believes that the fourth *Tabron* factor weighs slightly in favor of appointing *pro bono* counsel.

The fifth *Tabron* factor asks whether expert testimony will be needed. *Tabron,* 6 F.3d at 156. McGillvary argues that counsel should be appointed "[b]ecause it is already established that expert testimony will be necessary in this case, and [he] his unable to present his case in this regard due to lack of education and experience." [Dkt. 147] at 37-38. In the first instance, it is not clear to the Court at this juncture what expert discovery will be necessary in this case.[2] In any

---

[2] The Court acknowledges that "[m]edical deliberate indifference claims under the Eighth Amendment generally require expert medical testimony," *Pajo v. Agri-Indus.*, Civ. No. 21-10423 (EAP), 2023 WL 4407678, at *4 (D.N.J. July 7, 2023) (citing *Colston v. Corr. Med. Servs.*, 256 F. App'x 551, 553 (3d Cir. 2007) (not precedential) (further citations omitted)), but McGillvary has not yet addressed the contours of what expert testimony (if any) will be required on his claim here. Indeed, while McGillvary identifies several individuals that he contends must participate in this case as expert witnesses, including "Youngblood, Piccone, Zelaya, Lopez, and Bernhard," [Dkt. 147] at 37, it is not clear that these individuals will (or can) testify as expert witnesses, as opposed to fact witnesses, in this case. Moreover, McGillvary also asserts that expert testimony will be needed for his negligence claim, but expert testimony is not always required to establish a breach of duty in negligence cases. *See, e.g., Ellman v. Saint Joseph's Reg'l Med. Ctr.*, Civ. No. A-3554-21, 2024 WL 657047, at *3 (N.J. Super. Ct. App. Div. Feb. 16, 2024) ("In ordinary negligence cases, 'defendant's careless acts are quite obvious, [and] a plaintiff need not present expert testimony at trial to establish the standard of care.'" (quoting *Palanque v. Lambert-Woolley*, 168 N.J. 398, 406 (2001)).

event, the need for expert witnesses alone does not require the appointment of counsel. *Lasko v. Watts*, 373 F. App'x 196, 202 (3d Cir. 2010) (not precedential) (highlighting plaintiff's "demonstrated ability to present his claims to the court and the court's ability to appoint counsel later in the proceedings if the circumstances changed" as reason to deny counsel despite plaintiff's claimed need to submit expert testimony).  Because it is too early to tell whether, and to what extent, expert discovery may become necessary in this case, the Court concludes that the fifth *Tabron* factor weighs against the appointment of counsel at this time.

Finally, the sixth *Tabron* factor requires the Court to consider "plaintiff's financial ability to attain and afford counsel on his own behalf." *Jones*, 2015 WL 7432349, at *4 (citing *Parham*, 126 F.3d at 461).  Here, McGillvary provided documentation of his unsuccessful efforts to obtain counsel in this case, but the fact that plaintiff has sought outside counsel who declined to accept his case "does not, on its own, justify the appointment of counsel." *Fletcher v. Grynkewicz*, 644 F. App'x 167, 172 (3d Cir. 2016) (not precedential).  That said, McGillvary indicates that the circumstances of his incarceration have hindered his ability to contact other attorneys, and the fact that McGillvary is proceeding *in forma pauperis* indicates that he likely cannot afford a lawyer.  The sixth *Tabron* factor thus weighs in favor of appointing *pro bono* counsel.

Balancing the *Tabron* factors together, one weighs clearly in favor of appointing *pro bono* counsel, one weighs slightly in favor of appointment, and the remaining four weigh against appointment.  On the whole, the Court concludes that

appointment of counsel is not warranted at this time.  The Court will therefore exercise its discretion to deny McGillvary's motion without prejudice.  The Court notes, however, that *pro bono* counsel may be appointed at any stage of the litigation, *Tabron* 6 F.3d at 156, and the Court recognizes the ongoing and evolving nature of this case.  Should the facts relevant to the *Tabron* analysis materially change as the case proceeds, McGillvary may renew his motion for the appointment of *pro bono* counsel.

*

For the foregoing reasons,

**IT IS** on this 27th day of May, 2026,

**ORDERED** that McGillvary's motion for the appointment of *pro bono* counsel [Dkt. 147] is DENIED without prejudice; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on McGillvary by regular U.S. mail.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE