Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

July 14, 2026

Hon. Michael A. Shipp, U.S.D.J.
US Dist. Ct. - DNJ
US Courthouse, Ct. Rm. 4W
402 E. State St.
Trenton, NJ 08608

RECEIVED AT 8:30 JUL 20 2026 CLERK, U.S. DISTRICT COURT - DNJ M

    RE: Caleb L. McGillvary v. Rahmo Reiz
    Civil Action No. 3:22-cv-06430-MAS-JBD
    Hon. Michael A. Shipp, U.S.D.J.
    Hon. J. Brendan Day, U.S.M.J.

Dear Judge Shipp;

    Please accept this letter in lieu of a more formal brief in reply to Defendants' opposition to Plaintiff's objections to the magistrate's order, ECF 173.

    As a preliminary matter, Defendants cite to the wrong standard of review for this objection. They state that the "Clearly erroneous" and "Contrary to law" standard of Rule 72(a) applies, but that standard is only for nondispositive matters. When, as here, the matter is dispositive of a claim, the standard of Rule 72(b) comes into effect. See Rule 72(b)(1). Under this standard, "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Rule 72(b)(3). This cuts the floor out of Defendants' arguments that Plaintiff has in part posited some of the same arguments from his motion, in his objection: He is entitled to de novo review, and it is more fitting that Judge Shipp would revisit his own prior holding in light of new

1

evidence than that Judge Day would overrule it. Plaintiff therefore avers that de novo review is the proper standard.

## 1. Medical Malpractice

Defendants have spent over two years lying to the Court about x-rays "not being kept in the normal course"; on the transcript in numerous hearings and in their briefs (See "4" below for abundant citations to the record proving this). These two years of intentionally dilatory tactics by Defendants are the sole cause of the delay in amendment, and their repeated fraud upon the Court **on the cold record** (see "4" below") speaks to their bad faith in doing so. In their latest round of deceptions, they play a three card monte with the Court, saying: "The bulk of Plaintiff's malpractice argument is devoted to the X-ray Theory," and "As to the Delay Theory ... Plaintiff offers almost nothing." But allow Plaintiff to cut through the Gordian Knot of Defendants' obfuscation: Plaintiff's entire malpractice argument is offered to show that Samual Lopez and Joel Bernhard committed malpractice by permitting an unlicensed dental hygienist to perform dental surgery under their supervision, and therafter unreasonably delaying treatment of the resulting injury. **Absolutely none of the argument has to do with the X-Ray Theory.**

So any of the argument Defendants offer regarding futility is mooted by this: Judge Day did not say the malpractice claim **which Plaintiff actually argued for in his objection** was by any means futile. Likewise is Defendants' deliberately

2

obfuscating claim that Plaintiff "offered almost nothing" moot, when Plaintiff's entire 7 pages of argument regarding medical malpractice were devoted entirely to addressing the medical malpractice claim which Judge Shipp stated was sufficiently alleged on the face of the First Amended Complaint. And in fact, based on that holding alone, Judge Day's order was erroneous because it conflicts with both Judge Shipp's prior holding and Rule 8(d) and the Supreme Court's admonition to liberally construe pro se pleadings to state a claim. See Haines v. Kerner, 404 U.S. 519 (1972); Erickson v. Pardus, 551 U.S. 89 (2007).

These 7 pages of argument show that the delay was solely attributable to Defendants and their repeated lying to the Court and intentionally dilatory tactics during discovery. They provide exactly the "sufficient explanation" for the delay, which Judge Day appears to have overlooked. The Defendants repeatedly flog arguments that there is no "new information," yet have tried to bury their responsibilty for the delay in amendment of existing information in an argumentum ad lapidem directed towards a strawman of an "X-Ray theory" arc in Plaintiff's objections. There is no such arc, and when that key pillar in Defendants' opposition falls, so does the rest of their argument against allowing amendment for this medical malpractice claim to proceed.

The most important argument which Plaintiff raised, and which neither the magistrate nor Defendants have addressed, is that it would greatly prejudice Plaintiff to not be permitted to litigate his malpractice claim against Lopez and Bernhard.

Specifically, that this prejudice outweighs delay, especially because the delay was the Defendants' own doing. It would amount to depriving Plaintiff of his day in Court, to refuse to allow him to pursue legal remedy against these two key actors for their roles in causing his complained-of injury. This is a manifest injustice which should not be allowed to stand.

In sum, Plaintiff offered exactly the allegations and arguments which Judges Day and Shipp currently and previously respectively held were necessary for amendment to state Medical Malpractice claims against Lopez and Bernhard. Judge Day appears to have overlooked these, although it is Judge Shipp's de novo review of this claim which he previously held to have been sufficiently alleged which is determinative. The Defendants have failed to oppose the arguments, instead erecting a strawman of the "X-Ray Theory" and arguing to the stone against it. Plaintiff respectfully asks the Court to overrule the magistrate's order and allow this claim to proceed.

## 2. Offensive Phsyical Contact

Defendants contend that Judge Day "squarely addressed and rejected" Plaintiff's argument regarding Reiz's responses to Plaintiff's Requests for Admissions. Yet Plaintiff had made a different contention to that overlooked by the magistrate, and the Defendants obfuscate this with their characteristic sophistry: Defendant "[held] himself out to Plaintiff as being authorized to provide such fillings." See ECF 177 at p. 9. This serves to provide evidentiary support for the same paragraph in

4

Plaintiff's complaint which Judge Shipp previously held stated a claim for offensive physical contact, by showing the supposed consent was obtained by fraud. See FAC, para. 63 ("Reiz ... intentionally touched Plaintiff ... with consent obtained by use of misrepresentations or fraud"); cf. ECF 2, p. 3.

Judge Day has not addressed Plaintiff's contention that Reiz holding himself out as permitted by law to perform fillings, when knowningly prohibited by law from doing so, was misrpresentation or fraud such to remove consent from the supposedly "voluntary" procedure. And Reiz's response to Plaintiff's Requests for Admissions attached to the declaration in support of the reply in support of the motion to amend show exactly that knowledge of prohibition reflecting the Defendant's misrepresentation in holding himself out in such fashion.

And the irony of Defendant's pedantic argument about "sweeping declarations of legal theories that are often simply incorrect" (aside and apart from his repeated lying to the Court about X-rays being kept in the normal course), is that he has premised his whole brief on the wrong standard. Plaintiff doesn't need to show clear error on an objection to an order dispositive of a claim: under Rule 72(b), the "correct legal theory" for such an objection is de novo review.

### 3. Conspiracy

Considering the de novo review of this decision, Plaintiff argues afresh that Judge Shipp's initial order on Defendants' Rule 12(b) motion indicated that the shortcoming in

pleading was that he omitted "the place, date, identities of parties, and tenor of agreement" constituting the conspiracy in question. The new proposed Second Amended Complaint cures these deficiencies, and would have been filed much sooner but for delays attributable solely to Defendants' and non-parties in privity with them. And in fact, Plaintiff has alleged numerous paragraphs showing that Lopez, Bernhard, and Reiz had a meeting of the minds to both break his tooth, and to cover up evidence of it afterwards; and that they took actions in furtherance of this conspiracy. See SAC, paras. 55-56, 93-102.

Because this conspiracy encompassed the destruction of X-rays which would show the damages done to Tooth #14 at the heart of this action, and because it is just and fair that each of the conspirators should be liable for the actions of their coconspirators, and because the circumstantial evidence points to the conspiracy of Lopez, Bernhard, and Reiz acting in concert to suppress evidence of wrongdoing, this legal theory should be advanced to the jury.

**4. Defendants' Unwarranted Delay and Lying to the Court are Evidenced by the Cold Record**

Defendants' use of Plaintiff's requests for extension to undergird their argument, fails to account for the fact that Plaintiff has by and large submitted his documents long before the extended deadline. It also doesn't account for him being in a maximum security prison and genuinely needing extra time in which to respond. Particularly galling, is the fact that almost all of

6

these requested extensions revolved around motions to compel made necessary by Defendants' stonewalling tactics.

The transcript of the May 30, 2024 hearing is believed to show that the Defendant argued that X-rays "are not kept in the normal course." It's certainly not the only deception Defendants have attempted upon the Court. Plaintiff is flabbergasted that Defendants would have the chutzpah to insist that Plaintiff's mere pointing out the facts of record was "repeated, unfounded, and inflammatory accusations." Such unbelievable gall and audacity cannot possibly be in good faith, and would not be the first violation of Rule 11 counsel for Defendants has committed, as Plaintiff will shortly show with abundant reference to the record. If the Court elects to impose sanctions against Defendants or their counsel under Rule 11, it should be noted that this is not the first time counsel for Defendants has committed fraud upon the Court. See Morganroth & Morganroth v. Norris, McLaughlin, & Marcus, PC, 331 F.3d 406, 414 (CA3 2003) ("the defendants knowingly made false representations in court proceedings"). Considering the judicially noticeable, longstanding policy of Norris McLaughlin to deceitfully mislead and outright lie to the federal courts; sanctions may indeed be proper against them in this case, as shown by the following:

**A. The Dental Charts**

Defendants, in their briefing of an opposition to Plaintiff's motion to enforce subpoenas against Rutgers,

7

deceptively left out the most crucial part of the Court's statement in regards to the dental charts:

> **"In light of the briefing and counsel's representation,** the Court is satisfied that there are no separate dental charts." See Transcript of the January 30, 2025 Conference ("Conf. Trans."), pg. T30:15-17.

This statement must be analyzed in the light of its basis. The Defendant's brief in opposition to that motion represented that "Dental charts and X-rays ... do not exist beyond what may be included in Plaintiff's [electronic] medical records." ECF 72, Pg. 3. And during the January 30, 2025 conference, counsel for Defendant represented to the Court, "So dental charts -- everything that we have in connection with a dental examination, what the dentist or the hygienist is doing is input into the EMR, the electronic medical record. There are not separate documents that are kept, separate dental charts." Conf. Trans. pg. T20:20-24.

But the declaration of Dr. Andrew Youngblood, D.M.D. shows that the briefing and the representation of Defendants were false: there WERE separate documents that are kept, in the "medical reference file"; ECF 88.1 at para. 5; and a "paper medical chart"; Id. at para. 9. This is in keeping with the requirements of New Jersey law regarding the practice of dentistry in penal institutions:

> 1.) "A complete medical record shall be maintained for each inmate [and] shall contain ... each health encounter with health care staff [and] laboratory, x-ray, and diagnostic studies." N.J.A.C. 10A:16-2.18.
> 2.) "A contemporaneous, permanent patient record shall be prepared and maintained by a licensee for each

8

person seeking or receiving dental services [...] Such records shall include, at a minimum: [...] the dates of each patient visit and an accurate description of all treatment or services rendered and the materials used at each visit [and] radiographs, if any, of a diagnostic quality and description of all diagnostic models made, identified with the patient's name and the date. If the radiographs are sent out of the dental office, the dentist shall retain the originals or a diagnostic copy of the radiographs in the patient record." N.J.A.C. 13:30-8.7(a)(5), (6). "Patient records, including all radiographs, shall be maintained for at least seven years from the date of the last entry." N.J.A.C. 13:30-8.7(d). "Licensees shall provide patient records to the patient ... upon receipt of a written request from a patient ... and within 14 days thereof, legible copies of the patient record including, if requested, duplicates of models and copies of radiographs, shall be furnished to the patient." N.J.A.C. 13:30-8.7(e)(1).

Counsel for Defendants has represented Rutgers in enough 8th Amendment and Malpractice lawsuits to know all the foregoing. It beggars belief that counsel would say after numerous cases defending this very client, in any semblance of good faith, that she wasn't aware of the existence of "separate documents that are kept, separate dental charts." Conf. Trans. pg. 20:24. Indeed, counsel offered to provide the records to the Court in camera; ECF 105, pg 2 n.1; yet had refused to concede the existence of these paper dental charts to Plaintiff, even after almost a full year of rigmarole: further underscoring defendants' bad faith in causing delay in the amendment of the complaint.

## B. The Magically Disappearing X-Rays

Methinks Rutgers doth protest too much, vociferously objecting to being called out for fraud and dishonesty. As set forth above, counsel did indeed gaslight and lie to the Court

9

about the existence of paper charts separate from the EMR. Counsel during the January 30, 2025 hearing was not sworn in, and seemed to regard that fact as a license to also repeatedly lie to the court that hard copies of x-rays aren't kept in the normal course. But when pushed to commit to a position under penalty of perjury, Rutgers produced a declaration that indicated the full scope of generation and retention of x-rays: giving the lie to counsel's representations to the contrary. The generation and retention process of Rutgers should be known to counsel like the back of her hand, after representing Rutgers in numerous cases. In light of this familiarity and the Youngblood declaration, counsel's following representations couldn't possibly be in good faith:

> 1.) "x-rays, for whatever reason, are not kept in the normal course like a regular dentist. They look at them and that's what they address. So they then insert into the [electronic] medical chart whatever it is they see, assuming they had an x-ray. If they had an x-ray, it is explained in the electronic medical record, and that is what we have. That is what we keep." Conf. Trans. pg. T21:20-22:1.
> 2.) "There are not hard copy documents of the x-rays. So if an x-ray is taken, and they visually look at it on the screen or wherever it is, that is what the doctors use. **We have been over this multiple times**. And while I cannot dispute that the medical records indicate that x-rays were taken, I can confirm that x-rays are not kept in what a normal dentist's office outside of the prison is. We do not have hard copy copies of the x-rays that the dentists look at when they're treating the patient." Conf. Trans. pg. T23:19-24:2 (emphasis added).
> 3.) "Anything that is input into the [electronic] medical records, you can read, but we do not have copies of what was seen." Conf. Trans. pg. T24:12-14.

The Court confirmed their understanding was in line with Plaintiff's: "It sounds to me as if -- as though the x-rays, as in the normal course, are not kept." Conf. Trans. pg. 26:1-3. So counsel is not just calling Plaintiff's understanding "unfounded and inappropriate"; and if that's not gaslighting, then the term as it's commonly understood has lost its meaning.

Defendant further attempted to gaslight and lie to the Court by saying "there is no evidence in the record that the June 11, 2019, January 2, 2020, and late 2021 x-rays even exist. "With respect to those dates, Plaintiff's medical records are devoid of any reference that an x-ray was taken." ECF 105, pg. 2. But during the hearing, Rutgers admitted that "I cannot dispute that the medical records indicate that x-rays were taken." Conf. Trans. pg. T23:22-24. Indeed, Rutgers admitted in response to the Court's own pointed questions, that "If the dentist indicates in the medical record that an x-ray was taken, I do not dispute that." Id. at pg. T22:5-6. Yet they switched  up their position to the Court despite the following records establishing the existence of x-rays:

1.) The dentist Samual Lopez indicated in the medical record he created on June 11, 2019 that radiographs were taken of Plaintiff's mouth on that date. Rutgers has conceded that their "understanding was [Plaintiff's] understanding was that because there were x-rays taken to the left, to the center, and to the right, he believed that a Panorex machine was not -- was used." Conf. Trans. pg. 22:16-19. The Court acknowledged that

11

"[Plaintiff] may not be using the correct terminology"; Id. at pg 23:10-11; then pointedly asked counsel for Rutgers to clarify whether x-rays of any sort were created on June 11, 2025: "Ms. Raymond-Flood, that does not alleviate my lack of understanding of whether x-rays are maintained in the normal course. I would think that if an inmate or a patient's mouth is x-rayed, that those x-rays are kept." Id. at pg. 23:12-17 (emphasis provided). After taking the Court on a trip down the garden path, Ms. Flood stated in specific regards to June 11, 2019, "I cannot dispute that the medical records indicate that x-rays were taken." Id. at pg. 23:22-24.

2.) The dental hygienist Defendant Rahmo Reiz indicated in the medical record he created on April 15, 2021, "routed to DA for biennial exam and xray"; which Dentist Samual Lopez thereafter ratified on April 23, 2021.

3.) The dentist Samual Lopez indicated in the medical record he created on February 1, 2022 that radiographs were taken of Plaintiff's mouth on that date.

To sum it all up, Defendants have been stringing along the Court and parties for a long slow trip down the garden path. This is backed up by abundant citations to the record, showing where **counsel for defendants repeatedly lied to the Court's face**. This isn't a hypothetical, a hyperbole, or an ad hominem: It's just the record. For these reasons, any delay in amendment should be held to be solely attributable to Defendants, and Plaintiff respectfully urges the Court to admonish counsel for Defendants

12

on the record about lying to the Court even once, never mind repeatedly. It is, after all, right there on the cold hard transcript.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully urges the Court to apply **de novo** review and sustain the Plaintiff's objections.

Dated: 7/14/26

Respectfully Submitted,

By: _____
Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ

08625-0861

13